## Commonwealth v. Huntsberger

*Sandra L. Guydon, Special Assistant Attorney General*, for the Commonwealth.
*Louis M. Shucker*, for appellant.

ESHELMAN, W.R., *J.*, March 19, 1981—This case is before the court on an appeal by William L. Huntsberger (hereinafter "appellant") from the recall by the Department of Transportation of his driver's license to operate a school bus, designated a Class 4 license under §1504(d)(4) of the Vehicle Code, Act of June 17, 1976, P.L. 162, §1, 75 Pa.C.S.A. §1504(d)(4).

The facts in this case are not in dispute. Appellant served as a commercial bus driver in the City of Reading/Berks County area from 1933 through 1977. In 1973 appellant suffered a heart attack— a myocardial infarction, which caused him to be absent one month from his employment as a bus driver. Before returning to work appellant received permission to do so from his personal physician, Dr. Noel Rowan, and also from his employer's physician. Thereafter, until the time of his retirement in 1977, appellant continued to be employed in the capacity of commercial bus driver without incident. After his retirement, appellant was unemployed for several months until he was employed by the Berks County Intermediate Unit as a school bus driver. As a prerequisite to this employment appellant underwent medical examinations and was determined to be qualified, and has since undergone

semi-annual physical examinations by Dr. Noel Rowan, who is appellant's personal physician, and who also examined appellant periodically for purposes of qualifying for school bus driver's license, and was found qualified. Appellant currently takes no medication for a heart condition and took medication only for a period of nine months immediately following his myocardial infarction in 1973.

On August 30, 1980, Dr. Rowan examined appellant and completed a "School Bus Driver's Physical Examination" form (Exhibit No. 5), wherein he reported that he found appellant qualified, that appellant had suffered a myocardial infarction in 1973 but has been asymptomatic since that time and takes no cardiac medicine. On October 13, 1980, Dr. Rowan completed a "Cardiovascular Form" (Exhibit No. 4) wherein he stated that the diagnosis was arteriosclerotic coronary artery disease, that appellant had a myocardial infarction and from a medical standpoint Dr. Rowan considered appellant to be physically competent to operate a motor vehicle. On October 15, 1980, Dr. Jones, a member of the Medical Advisory Board of the Department of Transportation, disapproved appellant for a Class 4 school bus driver's license because of appellant's history of myocardial infarction and arteriosclerotic coronary artery disease (Exhibit No. 3), and upon further review of the case on October 30, 1980, Dr. Jones noted the Title 67 Regulations providing requirements for passing the physical examination as including "(3) No established medical history or clinical diagnosis of: . . . (ii) Myocardial infarction, . . . " (Exhibit No. 2). By notice from the Secretary of Transportation dated October 17, 1980, appellant's Class 4 driver's license was suspended pursuant to § 1519 of the Vehicle Code, 75 Pa.C.S.A. § 1519 (relating to determination of in-

competency) and he was advised to return his license to the Department of Transportation. On November 12, 1980, appellant filed an appeal from the suspension, which appeal operated as a supersedeas restoring appellant's Class 4 driving privileges pending determination of the appeal. The case is now before this court for disposition.

Section 1509 of the Vehicle Code, 75 Pa.C.S.A. § 1509, sets forth some of the qualifications necessary for issuance of a Class 4 license, including the provision that no person shall be issued such license unless the person has satisfactorily passed an annual physical examination given by the physician for the school district by which the person is employed. Section 1504(c) of the Vehicle Code, 75 Pa.C.S.A. § 1504(c) directs that the Department of Transportation establish by regulation the qualifications necessary for the safe operation of the various kinds of vehicles and the manner of examining applicants to determine their qualifications for the type or class of license applied for. To facilitate the adoption of such regulations, § 1517 of the Vehicle Code, 75 Pa.C.S.A. § 1517, creates a Medical Advisory Board to consist of 13 members, eight of whom must be specialists in various designated medical fields, and directs the board to formulate rules and regulations for adoption by the Department of Transportation on physical and mental criteria relating to the licensing of drivers.

On September 24, 1977, by order published in Volume 7, Pennsylvania Bulletin, page 2702, the Pennsylvania Department of Transportation adopted regulations formulated by the Medical Advisory Board, including 67 Pa. Code, § 150.3, which provides as follows:

"§ 150.3. Physical examination.

(a) General rule. A physical examination shall

be given by a school transportation physician.

(1) to every applicant for a Class 4 driver's license.

(2) annually, to every holder of a Class 4 driver's license.

(b) Requirements of physical examination. Following are the minimum requirements for passing a physical examination:

• • •

(3) No established medical history or clinical diagnosis of:

• • •

(ii) Myocardial infarction, angina pectoris, coronary insufficiency. . . . "

Because appellant has an established medical history of a myocardial infarction, he was determined not to have met the minimum requirements of this regulation, resulting in suspension of his Class 4 license. Appellant now challenges the validity of the regulation on grounds that it is arbitrary and capricious as applied to appellant, that it goes beyond the intent of the Vehicle Code, and that it creates an invalid irrebuttable presumption.

In reviewing a regulation promulgated under the legislative rule-making power of an administrative agency, the Pennsylvania Supreme Court stated the following in Uniontown Area School District v. Pennsylvania Human Relations Commission, 455 Pa. 52, 76-78, 313 A. 2d 156, 169 (1973):

"There is a well-recognized distinction in the law of administrative agencies between the authority of a rule adopted by an agency pursuant to what is denominated by the textwriters as legislative rule-making power and the authority of a rule adopted pursuant to interpretative rule-making power. The former type of rule 'is the product of an exercise of legislative power by an administrative

agency, pursuant to a grant of legislative power by the Legislative body,' and 'is valid and is as binding upon a court as a statute if it is (a) within the granted power, (b) issued pursuant to proper procedure, and (c) reasonable.' . . . A court, in reviewing such a regulation, 'is not at liberty to substitute its own discretion for that of administrative officers who have kept within the bounds of their administrative powers. To show that these have been exceeded in the field of action . . . involved, it is not enough that the prescribed system of accounts shall appear to be unwise or burdensome or inferior to another. Error or unwisdom is not equivalent to abuse. What has been ordered must appear to be "so entirely at odds with fundamental principles . . . as to be the expression of a whim rather than an exercise of judgment." ' . . .

"An interpretive rule on the other hand depends for its validity not upon a law-making grant of power, but rather upon the willingness of a reviewing court to say that it in fact tracks the meaning of the statute it interprets. While courts traditionally accord the interpretation of the agency charged with administration of the act some deference, the meaning of a statute is essentially a question of law for the court, and, when convinced that the interpretative regulation adopted by an administrative agency is unwise or violative of legislative intent, courts disregard the regulation. . . . " (Citations and footnote omitted.)

Applying these standards of review, the challenged regulation in the instant case is clearly valid. Section 150.3(b)(3)(ii) is a legislative regulation rather than an interpretative regulation since it was adopted pursuant to the express grant of rule-making power in § 1504(c) of the Vehicle Code. The regulation is within the granted power since its

purpose is to prescribe the qualifications necessary for "safe operation" of a school bus and the "manner of examining applicants" to determine their qualifications for Class 4 licenses under the Code. There is no contention that the regulation was not issued pursuant to the proper procedure. Further, the regulation is reasonable. In determining the qualifications of drivers for a Class 4 license, special consideration must be given to the fact that Class 4 licensed operators are entrusted with the responsibility of transporting school children to and from their schools safely. The Department does not contend that appellant is incompetent to operate a motor vehicle for his own personal use or otherwise, but the Department by its rules and regulations formulated by the Medical Advisory Board, requires special physical qualifications for school bus drivers. The advisability of granting what type of driving privileges to a person who has suffered a myocardial infarction is a determination best left to those with medical expertise. Lacking such expertise, we are unable to make a valid judgment regarding the likelihood and severity of another heart attack or other medical difficulties of a person who has suffered a myocardial infarction, and we defer to the regulation established by the Medical Advisory Board, particularly when concerned with the additional safety precautions required when the transportation of school children is involved. Thus, although appellant's physician is of the opinion that appellant is competent to drive a school bus, we cannot conclude that the precautionary position taken by the Medical Advisory Board as expressed in the regulation, is unreasonable. Therefore, we conclude that the regulation is not arbitrary or capricious.

Appellant also contends that the regulation goes beyond the intent of the Vehicle Code. The statute provides that there be different classes of drivers' licenses and different qualifications required of persons for obtaining such licenses, depending on the kind of vehicle and the safety risk involved. The regulation in the instant case merely carries out this statutory intent by requiring more stringent medical and physical qualifications for school bus drivers than for certain other drivers. Thus, the regulation is not beyond the intent of the statute.

Appellant's final contention is that the regulation creates an irrebuttable presumption that any driver who has suffered a myocardial infarction is an unsafe driver for purposes of a Class 4 license, regardless of any evidence to the contrary regarding the driver's health, and that irrebuttable presumptions are disfavored by the law and in certain cases have been unconstitutional. While it is true that irrebuttable presumptions are disfavored by the law, they are only held to be constitutionally invalid if the right or status affected is entitled to constitutional protection, or, if not so entitled to protection, if the presumption imposed or criteria applied bears "no rational relation to a legitimate legislative goal." Weinburger v. Salfi, 422 U.S. 749, 772, 45 L.Ed. 2d 522, 542, 95 S.Ct. 2457 (1975).

Operating "a vehicle on the highways is not a civil or property right but a privilege, the enjoyment of which is subject to such regulation and control as the state may see fit to impose." Com. v. Gallagher, 3 Pa. Commw. 371, 375, 283 A. 2d 508, 510 (1971).

Consequently, the privilege of operating a vehicle is not entitled to strict constitutional protection, and in order to uphold the presumption in the instant case, there need be only a rational relation

between the presumption that medical history of a myocardial infarction renders a driver an unsafe risk for purposes of a Class 4 license and the legislative goal of assuring the safe transportation of school children. We conclude that such a rational relation exists in the instant case.

Appellant has cited the case of Com. v. Byrd, 41 Pa. Commw. 38, 399 A. 2d 425 (1979), where, on facts virtually identical to those in the instant case and involving a regulation substantially the same as that under present consideration, the Commonwealth Court held the regulation invalid and reinstated defendant's school bus operator's license. However, Byrd is distinguishable from the instant case on several grounds. In Byrd, the regulation under consideration was interpretive rather than legislative since it was not adopted pursuant to any express grant of rule-making power, and the standard of judicial review in Byrd was not one of reasonableness, but whether the regulation implemented the meaning of the statute it purported to interpret. In addition, Byrd was decided under the earlier 1959 Vehicle Code, Act of April 29, 1959, P.L. 58, No. 32, formerly 75 P.S. § 101 et seq., since repealed and replaced by the 1976 Vehicle Code which is the applicable statute in the instant case along with the regulations thereafter adopted by the Department of Transportation.

For the above reasons, the instant appeal must be dismissed.