513 A.2d 551

Deborah Anne Sheakley, Appellant *v.* Commonwealth of Pennsylvania, Department of Transportation, Appellee.

Submitted on briefs June 12, 1986, to Judge MacPhail, and Senior Judges Rogers and Barbieri, sitting as a panel of three.

*H. David Rothman,* for appellant.

*Harold H. Cramer,* Assistant Counsel, with him, *Spencer A. Manthorpe,* Chief Counsel, and *Jay C. Waldman,* General Counsel, for appellee.

OPINION BY SENIOR JUDGE BARBIERI, July 30, 1986:

This is a driver's license suspension case wherein the Department of Transportation (PennDOT) suspended the driver's license of the Appellant, Deborah Anne Sheakley, for a period of one year pursuant to Section 1547 of the Vehicle Code, 75 Pa. C. S. §1547, for her refusal to submit to a breathalyzer test. Sheakley has appealed that suspension on several grounds. We affirm.

The pertinent facts are as follows. On April 5, 1984, Sheakley's vehicle was stopped by a Pittsburgh police officer after the officer observed her driving in an unsafe manner. After he had stopped her vehicle, the officer detected the odor of alcohol emanating from Sheakley and observed that she was both combative and staggered when she walked upon exiting the vehicle. The officer arrested her for driving under the influence and she was transported to a nearby police station. At the station, Sheakley was requested to submit to a breathalyzer and informed that her license would be

suspended for one year upon her refusal to take the test. She refused.

Subsequent to her refusal, Sheakley was admitted to the Accelerated Rehabilitative Disposition (ARD) program pursuant to Pa. R. Crim. P. 175-186 in connection with the criminal driving under the influence charge. Under the ARD program, she lost her driving privileges for thirty days.

On April 27, 1984, PennDOT notified her that it was suspending her driver's license for a period of one year pursuant to 75 Pa. C. S. §1547 as a result of her refusal to submit to a breathalyzer at the time of her arrest on April 5, 1984. She appealed that suspension to Allegheny County Common Pleas Court which dismissed her appeal after a *de novo* hearing and affirmed PennDOT's suspension order. She has since filed a timely appeal of the common pleas order with this Court.

In this appeal, Sheakley contends that: (1) her due process and equal protection rights were violated when the arresting officer failed to inform her of the availability of the ARD program even if she failed the breathalyzer test prior to requesting that she take the test, thus rendering her refusal neither knowing nor informed; (2) that 75 Pa. C. S. §1547, which mandates an automatic suspension of a driver's license for a refusal to submit to a breathalyzer, is an unconstitutional encroachment upon the powers of the judiciary by the General Assembly; and (3) that the mandatory one year suspension for a refusal to submit to a breathalyzer is an unconstitutional abuse of the Commonwealth's police power. We shall address those issues in the order stated. We are also cognizant that, in driver's license suspension appeals, where the common pleas court is the fact finder, our scope of review is limited to determining whether or not the common pleas court based its findings of

fact upon substantial evidence or committed an error of law. *Department of Transportation, Bureau of Traffic Safety v. Stafford,* 28 Pa. Commonwealth Ct. 157, 367 A.2d 816 (1977).

Sheakley's initial contention is that the constitutional guarantees of due process and equal protection require that an arresting officer inform a motorist arrested for driving under the influence of the availability and effects of the ARD program prior to requesting a motorist to submit to a breathalyzer test so that the motorist may make a knowing and informed judgment as to whether or not to submit to the test. The essence of her argument is that Section 1547, commonly known as the "Implied Consent Law," is so intertwined with the criminal section dealing with driving under the influence, Section 3731 of the Vehicle Code, 75 Pa. C. S. §3731, that due process and equal protection require that a motorist make a knowing, informed and voluntary refusal to submit to a breathalyzer before their driver's license can be suspended for that refusal. She further contends that in order to make a knowing, informed and voluntary decision regarding the breathalyzer test, the motorist is entitled to be informed as to the availability and ramifications of the ARD program since eligibility for that program is specifically mentioned in Section 3731(e)(6)(ii) of the Vehicle Code, 75 Pa. C. S. §3731(e)(6)(ii). We disagree.

It is now beyond question that operating a motor vehicle upon the highways is not a civil or property right but is a privilege, the enjoyment of which is subject to such regulation and control as the Commonwealth sees fit to impose. *Maurer v. Boardman,* 336 Pa. 17, 7 A.2d 466 (1939), *aff'd sub nom., Maurer v. Hamilton,* 309 U.S. 598 (1940); *Commonwealth v. Gallagher,* 3 Pa. Commonwealth Ct. 371, 283 A.2d 508 (1971). One of the conditions imposed by the Commonwealth upon the

privilege of operating a motor vehicle upon its highways is the Implied Consent Law, which is not penal in nature and is designed to protect the public by providing an effective means of denying intoxicated motorists the privilege of using the roads. *Hando v. Commonwealth,* 84 Pa. Commonwealth Ct. 63, 478 A.2d 932 (1984); *Wisniewski v. Commonwealth,* 73 Pa. Commonwealth Ct. 318, 457 A.2d 1334 (1983). The Implied Consent Law expressly conditions the operation of a motor vehicle within the Commonwealth upon the motorist's consent, upon a proper request by a police officer, to take one or more chemical tests of breath, blood or urine to determine the alcoholic content of blood or the presence of a controlled substance. Section 1547(a) of the Vehicle Code, 75 Pa. C. S. §1547(a); *see generally,* Comment, *Pennsylvania's Implied Consent Law,* 35 U. Pitt. L. Rev. 394 (1973). While the chemical test may not actually be administered in the face of a motorist's refusal, the statute mandates that PennDOT suspend the driver's license of any motorist who refuses to take a chemical test. Section 1547(b) of the Vehicle Code, 75 Pa. C. S. §1547(b); *see also* 35 U. Pitt. L. Rev. 394. Also, the privilege of operating a motor vehicle that a driver's license embodies is not entitled to strict constitutional protection and that the conditions imposed upon the use of that privilege need bear only a rational relationship to a legitimate state objective. *Commonwealth v. Huntsberger,* 26 Pa. D. & C. 3d 562 (C.P. Berks 1981), *aff'd,* 76 Pa. Commonwealth Ct. 456, 463 A.2d 1288 (1983). There can be no question that the prevention of alcohol-related traffic fatalities and injuries is a legitimate state objective. Finally, we have often held that the Bureau's suspension proceeding against a motorist for refusing to submit to a breathalyzer is a civil proceeding which is not at all connected with any criminal charges which may be brought against

a motorist. *Commonwealth v. Clawson,* 9 Pa. Commonwealth Ct. 87, 305 A.2d 732 (1973).

In order to sustain a suspension of a motorist's driver's license for failing to submit to a breathalyzer, PennDOT is required to show, among other things, that the arresting officer fulfilled his or her statutory duty under Section 1547(b)(2) of the Vehicle Code, 75 Pa. C. S. §1547(b)(2), which requires that motorists be warned that their driver's licenses will be suspended or revoked upon their refusal to submit to a breathalyzer. *Department of Transportation, Bureau of Traffic Safety v. Sinwell,* 68 Pa. Commonwealth Ct. 605, 450 A.2d 235 (1982). We have also held that a motorist has no constitutional right to a prior warning of the consequences of a refusal to submit to a breathalyzer test and that the duty to warn is entirely statutory. *Id.* at 608-609, 450 A.2d 236-237; *Peppelman v. Commonwealth,* 44 Pa. Commonwealth Ct. 262, 403 A.2d 1041 (1979); *Boyle v. Department of Transportation, Bureau of Traffic Safety,* 19 Pa. Commonwealth Ct. 22, 339 A.2d 834 (1975). The only warning to which the motorist is entitled under the statute prior to being asked to submit to a breathalyzer is that the motorist's driver's license would be automatically suspended upon a refusal to take the test. The availability of ARD to a motorist charged with driving under the influence is entirely unrelated to the mandatory suspension provisions of the Vehicle Code. *Cf. Sutherland v. Commonwealth,* 45 Pa. Commonwealth Ct. 490, 407 A.2d 1364 (1979) (availability or nonavailability of ARD is entirely unrelated to the mandatory revocation provision of Section 616(a)(1) of the Vehicle Code of 1959 (repealed), *formerly* 75 P.S. §616(a)(1), which is now found at Section 1532(b)(1) of the Vehicle Code, 75 Pa. C. S. §1532(b)(1)). Once that request has been made, following the recitation of the statutory warning, anything substantially less than an

unqualified, unequivocal assent to take a breathalyzer test constitutes a refusal warranting an automatic suspension of the motorist's driver's license. *Department of Transportation, Bureau of Traffic Safety v. Wroblewski,* 65 Pa. Commonwealth Ct. 333, 442 A.2d 407 (1982). Sheakley's due process and equal protection argument are, therefore, without merit.

We next turn to Sheakley's contention that the mandatory suspension provision of 75 Pa. C. S. §1547 is a violation of the doctrine of separation of powers and an encroachment upon the power of the judiciary by the General Assembly. The gravamen of her argument here is that by imposing a mandatory sanction for a refusal to submit to a breathalyzer, the General Assembly is invading the province of the judiciary and depriving the motorist of the traditional exercise of judicial discretion based upon the facts and law of a particular case. This argument, too, is without merit.

We are persuaded that the mandatory suspension provision of 75 Pa. C. S. §1547 does not encroach upon the power of the judiciary and is a proper exercise of the Commonwealth's police power by the General Assembly. We find convincing the rationale utilized by our Supreme and Superior Courts in upholding the mandatory sentencing provisions which the General Assembly has enacted relating to various criminal offenses. In *Commonwealth v. Wright,* 508 Pa. 23, 494 A.2d 354 (1985), *aff'd, McMillan v. Pennsylvania,* 477 U.S.     , 91 L.Ed 2d 67 (1986), the Pennsylvania Supreme Court upheld the Mandatory Minimum Sentencing Act, 42 Pa. C. S. §9712, against a challenge that the statute violated the principle of separation of powers by restraining the discretion of the judiciary in sentencing. In his opinion upholding the constitutionality of that act, Chief Justice ROBERT N.C. NIX, JR. recognized that it is the province of the General Assembly, not the judiciary, to

determine the punishment imposeable for criminal conduct. *Citing Commonwealth v. Glover,* 397 Pa. 543, 156 A.2d 114 (1959) and *Commonwealth v. Redline,* 391 Pa. 486, 137 A.2d 472 (1958). *See also Commonwealth v. Michael,* 352 Pa. Superior Ct. 345, 507 A.2d 1263 (1986). Therefore, if it is within the province of the General Assembly to set the punishment imposable for criminal conduct, it is well within the General Assembly's province to set the sanction to be imposed for a failure to abide by a condition placed upon the use of the Commonwealth's public highways, which is subject to much less constitutional scrutiny than are cases where fundamental liberty interests are at stake. *Compare Santosky v. Kramer,* 455 U.S. 745 (1982) (involuntary termination of parental rights), *with Greenholtz v. Nebraska Penal Inmates,* 442 U.S. 1 (1979) (prison disciplinary proceedings). We are compelled, therefore, to reject Sheakley's constitutional arguments.

Her final contention is that the mandatory suspension provision of 75 Pa. C. S. §1547 is an abuse of the Commonwealth's police power. We have already noted that the privilege of operating a motor vehicle upon the public highways is not subject to strict scrutiny. *Huntsberger.* Rather, the exercise of the Commonwealth's police power will be upheld if the remedy bears some rational relationship to a legitimate objective of the Commonwealth. *Huntsberger,* 26 Pa. D. & C. 3d at 567-568. As we noted earlier, the purpose of the Implied Consent Law, 75 Pa. C. S. §1547, is to provide the Commonwealth with an effective means of denying intoxicated motorists the privilege of using the public highways and to reduce alcohol-related traffic fatalities and injuries. *See generally,* Comment, *The New Pennsylvania Drunk Driving Law: Last Call for the One-For-The-Road Era,* 87 Dick. L. Rev. 805 (1983). By providing for an automatic suspension of the driver's license of a motorist charged with driving under the in-

fluence following a refusal to submit to a breathalyzer, the General Assembly has set forth an expeditious way in which suspected intoxicated motorists may be taken off the roadways. The General Assembly emphasized the importance of getting suspected intoxicated motorists off the road by giving PennDOT absolutely no discretion in suspending the driver's license of a motorist who refused to submit to a breathalyzer test. This is clearly within the discretion of the General Assembly and bears a rational relationship to the Commonwealth's interests in safeguarding the public from injury or death at the hands of intoxicated motorists. Additionally, the motorists' due process and equal protection rights are adequately safeguarded by the *de novo* appeal procedure provided by the Implied Consent Law. *Cf.* *Mackey v. Montrym,* 443 U.S. 1 (1979) (Massachusetts implied consent law, Mass. Gen. Laws ch. 90 §24(1)(f), which provides for a *de novo* appeal of a suspension order resulting from refusal to submit to a breathalyzer, similar to 75 Pa. C. S. §1547, satisfies due process and equal protection guarantees). *See also Department of Transportation, Bureau of Traffic Safety v. Quinlan,* 47 Pa. Commonwealth Ct. 214, 408 A.2d 173 (1979). Accordingly, we reject Sheakley's assertion that the mandatory suspension provision of the Implied Consent Law is an abuse of the Commonwealth's police power.

Having disposed of Sheakley's contentions in favor of PennDOT, we must affirm the common pleas court's order which denied Sheakley's appeal.

ORDER

Now, July 30, 1986, the Order of the Court of Common Pleas of Allegheny County at Docket No. SA 550 of 1984, dated January 8, 1985, which dismissed the appeal of Deborah Anne Sheakley and affirmed the suspension order of the Department of Transportation is hereby affirmed.