588 A.2d 1033

Charles A. PILOTTI, Appellant,

v.

COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, Appellee.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 25, 1991.

Decided April 1, 1991.

634

Robert P. Ging, Jr., Confluence, for appellant.

William A. Kuhar, Jr., Asst. Counsel, with him, Timothy P. Wile, Asst. Counsel-in-Charge of Appellate Section, Harold H. Cramer, Asst. Chief Counsel, Vehicle & Traffic Law Div., and John L. Heaton, Chief Counsel, Pittsburgh, for appellee.

Before DOYLE and PELLEGRINI, JJ., and BARRY, Senior Judge.

DOYLE, Judge.

Charles Pilotti appeals from an order of the Court of Common Pleas of Allegheny County which dismissed his appeal of a one (1) year suspension of his driving privileges imposed by the Department of Transportation (Department) for his refusal to submit to chemical testing pursuant to Section 1547(b) of the Vehicle Code, 75 Pa.C.S. § 1547(b).

On December 22, 1989, Officer Daniel Dugan of the Robinson Township Police Department was called to the scene of a two vehicle accident. Pilotti informed Officer Dugan that he had been driving one of the vehicles involved in the accident. Officer Dugan observed a very strong odor of alcohol on Pilotti's breath, and further noted that Pilotti's eyes were glassy and that his speech was slurred. Pilotti was requested to perform field sobriety tests which he failed. Pilotti was then placed under arrest for driving under the influence and was advised of his *Miranda* [1] rights.

Officer Dugan testified at the de novo hearing held by the common pleas court that he transported Pilotti to Ohio Valley Hospital for the purpose of having blood drawn to determine Pilotti's blood alcohol content and that Pilotti was so advised. He further testified that he advised Pilotti of the implied consent law on the way to the hospital and again after their arrival at the hospital. Officer Dugan then informed Pilotti that he had a right to refuse to take the blood test but that if he did refuse, he would lose his license for one year. Pilotti was asked twice to submit to the blood test and refused both times. [2]

Pilotti testified that he was not injured in the accident and that he did not think he required *treatment*. Pilotti further testified that Officer Dugan told him that he was being

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. On cross examination, Officer Dugan acknowledged that during the preliminary hearing, he at times used the word "treatment" to refer to the blood test and the phrase "right to refuse treatment" to refer to Pilotti's option to refuse to submit to the blood test.

taken to the hospital for treatment and that he had a right to refuse treatment. He stated that he did not know that he could lose his license for so refusing.

By official notice dated and mailed January 16, 1990, the Department notified Pilotti of the one year suspension of his license for his refusal to submit to the chemical testing. Pilotti appealed to the common pleas court which dismissed his appeal, resolving credibility matters in favor of the Department and finding that Pilotti had been shown to have refused to take the blood alcohol test. The trial court later issued the following opinion in support of its order:

> Officer Daniel Dugan of the Robinson Township Police Department arrested Defendant Charles Pilotti for driving under the influence on December 22, 1989. Officer Dugan saw the Defendant at the scene of an accident. The Defendant smelled of alcohol, had glassy eyes, and spoke with a slur. He was marked a refusal by Officer Dugan.

> Defendant tries to manufacture an argument based on the inconsistent use of the word "treatment" by Officer Dugan. Was "treatment" used to mean care for injuries sustained in the accident or was "treatment" used to mean an intoxilyzer?

> From the facts adduced at the hearing, Defendant should have been aware that the trip to Ohio Valley Hospital was intended for the adminsitration (sic) of a breathalyzer and not for the treatment of injuries, especially since the Defendant was not injured. Therefore, this Court dismisses Defendant's appeal.[3]

Appeal to this Court followed.

On appeal, Pilotti does not contest the facts of his arrest, his intoxication or that he refused to submit to the blood test. He does argue that his refusal to take the blood test was not knowing and conscious because of his confusion

---

3. Although in the opinion in support of the order, the trial court refers to an "intoxilyzer" and a "breathalyzer", it is clear from remarks made at the conclusion of the hearing, that the trial court was aware that Pilotti was requested at the hospital to submit to a blood test, not a breath test.

resulting from statements made to him by the arresting officer. He maintains that by using the word "treatment" and by advising him that he had a right to refuse "treatment," the police officer created the type of confusion that the Supreme Court sought to avoid in *Department of Transportation, Bureau of Traffic Safety v. O'Connell*, 521 Pa. 242, 555 A.2d 873 (1989).[4]

■ As a threshold matter, we consider the issue of whether there is a right to refuse the chemical test. Section 1547(b) provides:

> If any person placed under arrest for a violation of section 3731 (relating to driving under influence of alcohol or controlled substance) is requested to submit to chemical testing and refuses to do so, *the testing shall not be conducted* but upon notice by the police officer, the department shall suspend the operating privilege of the person for a period of 12 months. (Emphasis added.)

We interpret this Section as conferring upon the licensee a right to refuse to the extent that the Department is prohibited from conducting the test if the licensee so refuses. However, this Section also imposes a penalty if the licensee does refuse. *See Sheakley v. Department of Transportation*, 99 Pa.Commonwealth Ct. 328, 513 A.2d 551 (1986), *petition for allowance of appeal denied*, 515 Pa. 586, 527 A.2d 546 (1987).

Having determined that a licensee does have the right to refuse the test, we now turn to the merits of Pilotti's argument. The Supreme Court in *O'Connell* required the police to tell a licensee of the consequences of a refusal to take the test so that the licensee could make a knowing and conscious choice. The licensee then has the burden of proving that he was not capable of making a knowing and conscious refusal to take the test. *O'Connell*. This is generally a factual determination which is to be made by the trial court. *Id.*

---

**4.** Pilotti makes no argument that he was confused about the applicability of his constitutional rights to the civil proceedings.

 Officer Dugan's testimony at the de novo hearing, which the trial court found credible is as follows:

Q. Did you advise [Pilotti] of the implied consent law?

A. Yes, I advised him on the way to the hospital and at the hospital, if he refused the test he would lose his license for one year.

Q. What was his response to your request to take the blood test?

A. He would not submit to the test.

Q. Do you recall what he said or did when you asked him to take the blood test?

A. After the second request for blood, he began to get belligerent, and he said he wouldn't take any damn test.

. . . .

Q. What did [Pilotti] say to you when you told him the purpose of the blood alcohol test?

A. I don't recall exactly what Mr. Pilotti said to me, but I did inform him that he was being transported to Ohio Valley Hospital to determine the amount of alcohol in his blood. He was also advised at the time he had the right to refuse the test, but *if he did he would lose his license for one year.* (Emphasis added.)

On cross examination, counsel for Pilotti requested the police officer to read several excerpts from the preliminary hearing where he used the word "treatment" to indicate the purpose of the trip to the hospital. On re-cross examination, the following exchange occurred between the trial judge and the police officer:

Q. Officer, did you use the terms blood test and treatment in the same light or did you distinguish in some way from those terms?

A. No, Your Honor, Mr. Pilotti, as I testified, was uninjured at the time and he had no signs of illness, and he stated he had no illness or injuries at the time.

Q. He did not need medical treatment, as such?

A. No, none whatsoever.

. . . .

Q. Did you use the term treatment and blood test interchangeably?

A. No, Your Honor.

We conclude that this testimony is legally sufficient to establish that Pilotti was adequately informed of the consequences of a refusal. Based upon the above portions of the police officer's testimony, we further hold that trial court's finding that Pilotti "should have been aware" that he was taken to the hospital for a blood test is supported by substantial evidence and that his refusal to submit to chemical testing was a knowing and conscious decision.

█ Pilotti next argues that the trial court erred in refusing to allow evidence that he had been placed on the Accelerated Rehabilitative Disposition (ARD) program [5] for the criminal charges of driving under the influence. Pilotti cites *Hando v. Commonwealth*, 84 Pa.Commonwealth Ct. 63, 478 A.2d 932 (1984), for the proposition that the intent of the implied consent law is to protect the public by denying intoxicated motorists the privilege of using the roads. He further argues that this intent has been fulfilled by his acceptance into the ARD program thereby rendering moot the necessity of a chemical test to determine his blood alcohol content.

The trial court excluded such evidence as irrelevant. It is well settled that the Department's suspension proceeding against a motorist for refusing to submit to chemical testing is an independent civil proceeding not at all connected with any criminal charges brought against a motorist. *Sheakley.* This Court has consistently held that the criminal proceedings have no relevance to the civil proceedings of a suspension under Section 1547. *Croissant v. Commonwealth*, 114 Pa.Commonwealth Ct. 601, 539 A.2d 492 (1988), *petition for allowance of appeal denied*, 520 Pa. 578, 549 A.2d 138 (1988). We, therefore, conclude that the trial court committed no legal error in its ruling.

5. *See* Pa.R.Crim.P. 175–186.

Accordingly, we affirm the order of the Court of Common Pleas of Allegheny County.

## ORDER

NOW, April 1, 1991, the order of the Department of Transportation in the above-captioned matter is affirmed.

BYER, J., did not participate in the decision in this case.