# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Anthony James King, | : | |
| Appellant | : | |
| | : | |
| v. | : | No. 296 C.D. 2024 |
| | : | |
| Commonwealth of Pennsylvania, | : | |
| Department of Transportation, | : | |
| Bureau of Driver Licensing | : | Submitted: March 4, 2025 |

BEFORE:   HONORABLE ANNE E. COVEY, Judge
HONORABLE LORI A. DUMAS, Judge
HONORABLE MATTHEW S. WOLF, Judge

**OPINION NOT REPORTED**

MEMORANDUM OPINION BY
JUDGE WOLF                                           FILED:  March 28, 2025

Anthony James King (Licensee) appeals from the February 12, 2024 order of the Court of Common Pleas of Luzerne County (trial court).  The trial court denied Licensee's appeal from the 18-month suspension of his operating privilege under Section 1547 of the Vehicle Code, 75 Pa.C.S. § 1547, commonly referred to as the Implied Consent Law.[1]  Finding no merit to Licensee's claims on appeal, we affirm the trial court's order.

---

[1] Section 1547(a) of the Vehicle Code states in relevant part:

(a) General rule. --Any person who drives, operates or is in actual physical control of the movement of a vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath or blood for the purpose of determining the alcoholic content of blood or the presence of a controlled substance

On June 25, 2023, Licensee was arrested and charged with driving under the influence of alcohol or a controlled substance (a violation of 75 Pa.C.S. § 3802) (DUI). Licensee's Reproduced Record (R.R.) at 3-4, Official Notice of Suspension. On September 26, 2023, the Department of Transportation, Bureau of Driver Licensing (Department) notified Licensee that his operating privileges would be suspended for a period of 18 months, effective October 31, 2023. R.R. at 3-4. Licensee appealed to the trial court, asserting that his refusal to submit to chemical testing was not knowing or voluntary and made contrary to his due process rights as guaranteed by the Fourteenth Amendment to the United States Constitution[2] because the warnings on the Department's Form DL-26 did not adequately advise him of the penalties associated with his refusal as a result of his prior DUI, and further asserting that the Implied Consent Law is violative of the Fourteenth Amendment for failing to set forth any standards as to when a police officer must send notice of a licensee's refusal to the Department. R.R. at 1-2, 17-18.

---

if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a vehicle in violation of section 1543(b)(1.1) (relating to driving while operating privilege is suspended or revoked), 3802 (relating to driving under influence of alcohol or controlled substance) or 3808(a)(2) (relating to illegally operating a motor vehicle not equipped with ignition interlock).

75 Pa.C.S. §1547(a) (emphasis added). Section 1547(b) of the Vehicle Code provides: "If any person placed under arrest for a violation of section 3802 is requested to submit to chemical testing and refuses to do so," the Department [of Transportation] shall suspend the operating privilege for 1 year, or 18 months under certain conditions. 75 Pa.C.S. §1547(b).

[2] U.S. Const. amend. XIV ("No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.").

On February 12, 2024,[3] the trial court held a *de novo* hearing on Licensee's appeal. Patrolman John Bevilaqua and Officer Samuel Van Horn both testified on behalf of the Department. Licensee testified on his own behalf. Patrolman Bevilaqua testified that on June 25, 2023, he observed Licensee commit a series of traffic violations and initiated a traffic stop. R.R. at 22, Notes of Testimony (N.T.) 4-5. Patrolman Bevilaqua further testified that upon pulling Licensee over, both he and Licensee exited their vehicles, and Licensee approached Patrolman Bevilaqua in an aggressive manner. *Id.* Patrolman Bevilaqua stated that as a result of Licensee's demeanor, he drew his service weapon and ordered Licensee to put his hands on his vehicle, subsequently taking Licensee into custody on suspicion of DUI. *Id.* Patrolman Bevilaqua testified that he did not conduct a field sobriety test due to safety concerns arising from Licensee's aggressive demeanor. R.R. at 22, N.T. at 6. However, Patrolman Bevilaqua noted that Licensee exhibited multiple indicia of intoxication, including glassy, bloodshot eyes and a staggered gait. R.R. at 22, N.T. at 4-6. Patrolman Bevilaqua testified that after he concluded that Licensee was intoxicated based on the observed behavior, he took Licensee to the police station for chemical testing by another officer, Officer Van Horn. R.R. at 23, N.T. at 7.

Officer Van Horn testified that he read the warnings on the Department's Form DL-26 to Licensee in their entirety, and Licensee refused to submit to testing. R.R. at 24, N.T. at 12-14.

---

[3] While the Notes of Testimony state that the commencement of the hearing was on February 13, 2024, this appears to have been a typographical error, given that the trial court's order sustaining Licensee's suspension was issued February 12, 2024. This is further clarified by the trial court's Pa.R.A.P. 1925(a) opinion, which makes it clear that the Exhibits from the hearing were dated February 12, 2024.

Licensee testified next. He explained that at his preliminary hearing on the criminal DUI charge, Patrolman Bevilaqua offered to forego sending Licensee's suspension paperwork to the Department if Licensee agreed to waive the preliminary hearing. R.R. at 25, N.T. at 17-18. Patrolman Bevilaqua was recalled to provide responsive testimony, wherein he explained:

> [Department's Counsel]: Okay. Mr. Bevilaqua, did you just hear Mr. King's testimony about the preliminary hearing?
>
> [Patrolman Bevilaqua]: I did.
>
> [Department's Counsel]: Can you tell us what happened at the preliminary hearing?
>
> [Patrolman Bevilaqua]: Before the preliminary hearing, I spoke with [Licensee's counsel and Licensee] about moving on with the case. Part of my plea agreement was that if the case were to move forward, I would not file the DL-26. . . in regards to his refusal and suspension.
>
> [Department's Counsel]: Okay. Then you filed the form after?
>
> [Patrolman Bevilaqua]: After the conclusion of the hearing I did.
>
> [Department's Counsel]: Okay. Did anyone give you the authority to do that?
>
> [Patrolman Bevilaqua]: Not specifically, no.
>
> [Department's Counsel]: Okay. So you didn't talk to anyone from [the Department] or . . . .
>
> [Patrolman Bevilaqua]: No, I did not.
>
> [Department's Counsel]: Or your supervisor or anything about that?

4

[Patrolman Bevilaqua]:  No.

R.R. 25-26; N.T. 18-19.

Following the hearing, the trial court denied Licensee's suspension appeal by order entered February 12, 2024.  R.R. at 48.  In its Pa.R.A.P. 1925(a) opinion, the trial court rejected Licensee's argument that the Department's Form DL-26 materially understated the penalties Licensee may be facing for refusal in light of the fact that he was previously convicted of DUI, citing this Court's decision in *Garner v. Department of Transportation, Bureau of Driver Licensing*, 879 A.2d 327 (Pa. Cmwlth. 2005).  The trial court likewise rejected Licensee's contention that the Implied Consent Law is violative of the Fourteenth Amendment because the statute lacks standards for when an officer must provide the Department with a notice of refusal.  Licensee appealed the trial court's order to this Court.

On appeal,[4] Licensee raises the same two issues for our consideration. First, Licensee contends that as a result of inadequate warnings on the Department's Form DL-26, his refusal to submit to chemical testing was not knowing and voluntary and made in violation of his due process rights under the Fourteenth Amendment.  Second, Licensee contends that the Implied Consent Law violates the Fourteenth Amendment because it is standardless and permits police officers undue discretion  to inform the Department of a licensee's refusal, as shown by Patrolman Bevilaqua's testimony here.  We address these issues *seriatim*.

First, Licensee argues that his refusal of chemical testing was not knowing and voluntary, as the Department's Form DL-26 warnings did not indicate

---

[4] This Court's review in license suspension matters "is limited to determining whether the trial court's necessary findings of fact were supported by substantial evidence and whether the trial court committed an error of law or otherwise abused its discretion." *Park v. Dept. of Transp., Bureau of Driver Licensing*, 178 A.3d 274, 279 n.2 (Pa. Cmwlth. 2018).

the correct criminal penalty that would apply to him upon refusal. Licensee's Brief at 9-10. Namely, as Licensee had previously been convicted of DUI, he faced a minimum of 90 days' imprisonment, rather than the 72 hours indicated by the Form DL-26. *Id.* Licensee maintains that absent accurate knowledge of the consequences of one's decision, the Department's warnings are inconsistent with due process protections provided to him under the Fourteenth Amendment. *Id.* at 10. The Department counters that the Form DL-26 warnings are legally adequate, and that a licensee need not be informed of exact penalties they may face upon refusal. Department's Brief at 8.

The Form DL-26 read to Licensee states in relevant part: "These [penalties for refusal] are the same penalties that would be imposed if you were convicted of driving with the highest rate of alcohol, which include a minimum of 72 consecutive hours in jail and a minimum fine of $1,000.00, up to a maximum of 10 years in jail and a maximum fine of $25,000." R.R. at 27.

This Court has held "[t]here is no constitutional requirement for a police officer to provide any warning to a licensee of the consequences of his failure to submit to a blood test, however, there is a statutory requirement." G*arlick v. Department of Transportation, Bureau of Driver Licensing*, 176 A.3d 1030 (Pa. Cmwlth. 2018). As the trial court aptly noted in its 1925(a) opinion, this Court has addressed this very issue in *Garner*. There, the trial court concluded that a licensee received inadequate warnings of the consequences prior to his refusal to take a breathalyzer test because the Department's Form DL-26 failed to advise that as a second time offender, Licensee faced a minimum criminal penalty that included at least 90 days in jail pursuant to 75 Pa.C.S. § 3804(c). Accordingly, the trial court vacated the licensee's license suspension. On appeal, this Court reversed, stating:

6

We believe common pleas erred in imposing an additional requirement that the information regarding potential suspensions and criminal penalties be specifically tailored to the circumstances of individual licensees. Aside from the fact that the [Implied Consent Law] does not require such specificity, it would be unrealistic to assume that at the time warnings must be given, arresting officers have sufficient accurate information to know what potential penalties the arrestee faces. As this court recently held:

> It is not the duty of the police to explain the various sanctions available under a given law to an arrestee to give that individual an opportunity to decide whether it is worth it to violate that law. It is sufficient for the police to inform a motorist that he or she will be in violation of the law and will be penalized for that violation if he or she should fail to accede to the officer's request for a chemical test. The verbiage on form DL-26 informs a motorist that he or she will be in violation of the law and will be penalized for that violation if he or she should fail to accede to the officer's request for a chemical test; that is sufficient information upon which to base a decision as to whether or not to submit to chemical testing.

*Garner,* 879 A.2d at 330-31 (quoting *Weaver v. Dep't. of Transp., Bureau of Driver Licensing*, 873 A.2d 1, 2 (Pa. Cmwlth. 2005), affirmed, 912 A.2d 265 (Pa. 2006)).

In reviewing and affirming this Court's decision in *Weaver*, 873 A.2d 1, the Pennsylvania Supreme Court stated that the Department's Form DL-26 permissibly includes only "minimum penalties, which suggests other penalties are available. While some arrestees may be more willing to submit to a chemical test if provided with the most severe penalties to which they may be subject, this information is not necessary under the statute." *Weaver*, 912 A.2d at 265.

7

Accordingly, we reject Licensee's argument that his refusal of chemical testing was not knowing, voluntary, or contrary to his due process rights, as the warnings provided to Licensee on the Department's Form DL-26 are legally sufficient.

Second, Licensee contends that the Implied Consent Law violates the Fourteenth Amendment because it is "standardless" and allows police officers undue discretion in determining when to notify the Department of a licensee's refusal.[5] Licensee's Brief at 11-12. Licensee maintains that Patrolman Bevilaqua's offer to forego mailing Licensee's suspension paperwork to the Department if Licensee waived his right to a preliminary hearing in his criminal DUI proceedings violated his due process rights. *Id.* We construe Licensee's second issue as raising both facial and as-applied claims under the Fourteenth Amendment.

As for Licensee's facial constitutional claim, we note that a licensee's criminal proceedings for DUI are entirely ancillary to the license suspension instituted for refusal under the Implied Consent Law. Therefore, any alleged procedural insufficiencies with respect to such criminal proceedings do not constitute a due process violation with respect to a licensee's civil suspension. This Court has previously stated:

> [T]he sanctions imposed by the Implied Consent Law, i.e., a license suspension, are civil in nature and are wholly unrelated to a criminal prosecution for DUI, which is governed by Section 3802 of the Vehicle Code. Our Courts have consistently held that a licensee may not seek civil remedies, i.e., the reversal of a license suspension, where the licensee's rights as a criminal defendant have been compromised.

---

[5] Licensee cites no legal precedent to support this claim.

*Sitoski v. Dep't. of Transp., Bureau of Driver Licensing*, 11 A.3d 12, 21 (Pa. Cmwlth. 2010)(citations omitted). Having clarified that the civil license suspension under the Implied Consent Law proceeds on a separate track from the ancillary criminal proceedings, we turn to Licensee's contention that police officers retain unfettered discretion to notify the Department, or not, of a licensee's refusal.

We previously addressed the concept of using a license suspension as a "bargaining chip" in *Department of Transportation, Bureau of Driver Licensing v. Lefever*, 533 A.2d 501 (Pa. Cmwlth. 1987), stating:

> The statutory suspensions following a refusal to submit to a blood alcohol test or a conviction for driving under the influence are not bargaining chips to be traded in exchange for criminal convictions; rather, they are mandatory civil penalties, imposed not for penal purposes, but "to protect the public by providing an effective means of denying an intoxicated motorist the privilege of using our roads."

*Id.* at 503 (quoting *Commonwealth v. Ebert,* 375 A.2d 837, 839 (Pa. Cmwlth. 1977)). Accordingly, police officers and prosecuting authorities have no discretion to use a licensee's civil license suspension as a bargaining chip in criminal DUI proceedings. Here, while Patrolman Bevilaqua did ultimately notify the Department of Licensee's refusal, as required by law, we strongly caution officers and prosecuting authorities against making offers like the one made in the instant case, as they have neither the discretion to make them nor are such offers binding with respect to the Department.

Indeed, it is well settled under the Implied Consent Law that the Department has *no* discretion in deciding whether to suspend a licensee's operating privileges following a violation of the Implied Consent Law. It is clear that the Department *must* do so. *See* Section 1547(b)(1)(ii) of the Vehicle Code (the

Department "shall suspend" a driver's license upon receiving notice of a licensee's violation of the law).

We likewise reject Licensee's as-applied due process challenge. To the extent prosecuting authorities purport to have the discretion to mail or not mail notice of a refusal, there is no due process violation where, as here, an offer is made and rejected. Licensee has suffered no harm in this instance—the refusal paperwork was simply mailed and his operating privileges suspended, as required by law. Where a prosecuting authority makes such an offer and subsequently reneges, perhaps a colorable due process violation claim could be lodged, but even in that instance there is already a remedy in Pennsylvania Rule of Criminal Procedure 541(A)(2), which allows for reinstatement of a criminal defendant's ability to challenge the sufficiency of the evidence in a case where the preliminary hearing was waived upon agreement and the object of that agreement was not accomplished. Pa.R.Crim.P. 541(A)(2). Rather, in the context of civil suspension, sufficient due process safeguards are provided by way of the *de novo* hearing. *See Sheakley v. Dep't of Transp.*, 513 A.2d 551, 555 (Pa. Cmwlth. 1986) (noting that "motorists' due process and equal protection rights are adequately safeguarded by the de novo appeal procedure provided by the Implied Consent Law.")

For the reasons articulated above, we conclude that the warnings read to Licensee from the Department's Form DL-26 were legally sufficient, and that he voluntarily and knowingly refused to submit to testing. Additionally, we reject Licensee's contention that the Implied Consent Law is standardless and thus violative of the Fourteenth Amendment to the United States Constitution. We stress that the statutory suspensions associated with refusal to submit to chemical testing

10

are mandatory civil penalties and may not be used as a discretionary bargaining tool in ancillary criminal proceedings.

      For the foregoing reasons, the trial court's order is affirmed.


_____

MATTHEW S. WOLF, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Anthony James King,            :
             Appellant       :
                                 :
             v.                 :    No. 296 C.D. 2024
                                 :
Commonwealth of Pennsylvania,   :
Department of Transportation,     :
Bureau of Driver Licensing       :

# **O R D E R**

AND NOW, this 28th day of March 2025, the order of the Court of Common Pleas of Luzerne County in the above-captioned matter, dated February 12, 2024, is AFFIRMED.

_____
MATTHEW S. WOLF, Judge