Maurer et al., Appellants, *v.* Boardman, Secretary of Revenue, et al.

Argued May 24, 1939. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Sterling G. McNees,* with him *Gilbert Nurick,* of Mc-Nees, Hollinger & Nurick, and *James H. Booser,* for appellants.

*George W. Keitel,* Assistant Deputy Attorney General, with him *Claude T. Reno,* Attorney General, and *James D. McHugh,* for appellees.

Richard N. Clattenburg, Harold S. Shertz and Richard V. Zug, for intervenor, under Rule 61.

OPINION BY MR. JUSTICE BARNES, July 3, 1939:

Plaintiffs seek to enjoin the enforcement of Section 1033(c) which was added to the Vehicle Code by the Act of June 29, 1937, P. L. 2329, 2401. This act forbids the operation upon the highways of this Commonwealth of a vehicle carrying an automobile over the cab or head of the operator of the carrier vehicle. Its provisions became effective upon the approval of the act by the Governor on June 29, 1937, but the granting of a preliminary injunction in the court below has resulted in postponing the date of enforcement. The defendants are the Secretary of Revenue, the Commissioner of the Pennsylvania Motor Police, and the Attorney-General, as the officers of the Commonwealth who are charged with the duty of administering and enforcing the provisions of the statute.

The act of 1937 added new sections to the Vehicle Code, one of which is designated as "Section 1033." The part thereof which is here challenged is sub-section (c), reading, except for the penalty clause, as follows: "No person shall operate a vehicle on the highways of this Commonwealth carrying any other vehicle, any part of which is above the cab of the carrier vehicle or over the head of the operator of such carrier vehicle."

It is admitted by defendants that they have instituted prosecutions under this Section in a number of cases within the state, and have taken steps to enforce the act against the plaintiffs, and generally throughout the Commonwealth. The plaintiffs, a partnership, have their principal place of business in Bloomsburg, Columbia County. The M. & G. Convoy, Inc., a New York corporation, having its office at Buffalo, filed a similar bill in equity for a restraining order against the defendants, and like action was taken by John G. Reeser, of Duncannon, Pennsylvania. All these parties are

engaged principally in the business of transporting new automobiles upon tractors and trailers especially constructed for that purpose, and their operations are almost wholly in interstate commerce. A number of owners and operators of such motor equipment intervened in the proceeding instituted by the M. & G. Convoy, Inc., and thereafter the three cases were consolidated in the court below.

In conducting their operations as common carriers of automobiles, the plaintiffs use forty vehicles, twelve of which are owned by them, and twenty-eight are upon lease. Plaintiffs allege that this equipment has a replacement value of approximately $100,000. All but one of these vehicles are registered in Pennsylvania, and the registration fees for the year 1937 have been paid to the Department of Revenue of this state. Each vehicle is built to carry four automobiles, and is so constructed that a portion of one of the transported automobiles rests over the cab of the carrier vehicle.[1] Plaintiffs further allege that they have built up an extensive transportation business, their gross receipts for 1936 being approximately $200,000, which affords regular employment to some seventy-eight persons.

Plaintiffs assert that the effect of the act in question will be to deprive them of the use of their property, because the removal of the car carried over the cab will take from the front wheels the weight required to afford traction to the carrier vehicle; that the vehicles cannot be remodeled to conform with the requirements of the act, so that a car will not be carried in that position. In consequence they say that it will be necessary for them to curtail, and possibly discontinue, their operations, as it is not feasible to reroute their traffic to avoid traveling through this state.

It is therefore averred that the prohibition contained in Section 1033(c) of the Vehicle Code is unconstitu-

---

[1] These vehicles are referred to as "truck-tractors."

tional, illegal and void for the following reasons: (1) it is not a valid exercise of the police power of the state, because the regulation is arbitrary and is not reasonably related to public safety; (2) it deprives plaintiffs of the use of their property without due process of law in violation of the Federal and State Constitutions, and also constitutes special legislation of the character forbidden by the Constitution of this Commonwealth; (3) that this state is without authority or jurisdiction to legislate upon the subject of interstate commerce upon its highways, because of the enactment by Congress of the Motor Carrier Act, 1935, and the issuance of regulations by the Interstate Commerce Commission pursuant thereto; (4) that the prohibition of the act constitutes an unreasonable and invalid burden upon interstate commerce, even in the absence of federal legislation upon the subject.

At the hearing in the court below there was evidence on behalf of the Commonwealth to prove that the operation of a truck-tractor with car over cab, is dangerous and unsafe to the operator thereof and to the traveling public; that the hazards of highway travel are materially increased by the use of these vehicles upon the roads of the Commonwealth, as was shown by testimony establishing the following facts: (a) The automobile over the cab raises the center of gravity of the vehicle, resulting in making its operation difficult, particularly on curves of the type to be found in Pennsylvania; (b) excess weight is placed upon the front wheels of the truck-tractor, thereby affecting detrimentally its steering, the action of its brakes, and throwing its headlights out of focus, to the danger of oncoming traffic; (c) the extension of the carried automobile and the vertical framework supporting it over the cab of the truck-tractor obstruct the vision of the operator, as well as that of drivers of over-taking vehicles; (d) overhead and lateral obstructions along the highway cause the truck-tractor to be operated upon the

wrong side of the road, to avoid scratching and damage to the carried vehicle; (e) the chains used to anchor the automobile over the cab, and the supporting structure, are insufficient to resist the force transmitted in the event of collision, with the result that the automobile becomes detached and falls off the carrier vehicle.

The Commonwealth contended that the establishment, maintenance and control of its highways are within the police power of the state, in the exercise whereof it has the right to forbid the operation thereon of vehicles or equipment which are dangerous or unsafe to the traveling public; that the provisions of the Section here involved were intended by the legislature solely as a safety measure. Evidence was also produced at the hearing of accidents in which this type of equipment was involved, from which it appeared that the transported automobile in such instances became dislodged and personal injuries and property damage resulted.

Following the hearing, the findings of the Chancellor were filed, in which it was held that Section 1033(c) is a valid exercise of the police power of the state, which the legislature not only had the power but was under a duty to enact, to provide for the public safety; that the car over the cab equipment, used by plaintiffs, is dangerous and unsafe when operated upon the highways of the state, and that plaintiffs were not entitled to the injunctive relief which they sought. Thereupon the court entered a decree nisi dissolving the preliminary injunction, and dismissing the bill of complaint. Exceptions to the findings were dismissed by the court in banc, and from the final decree dismissing the bill the plaintiffs have appealed to this Court.

As a valid exercise of the police power of the state, this sub-section of the act cannot successfully be questioned, in view of the decisions of this Court and those of the Supreme Court of the United States, which have broadly sustained that power. The state, as the owner of the highways, roads, streets and bridges of

the Commonwealth (*Tranter v. Allegheny County Authority*, 316 Pa. 65, 74) may vacate them or make any regulation necessary for the protection of life, limb or property thereon. The plenary power of the legislature so to regulate the use of the highways of the Commonwealth is of ancient standing. The regulation may not, of course, capriciously or arbitrarily affect interstate commerce, discriminate against such traffic, or violate fundamental rights guaranteed by our own Constitution. See *Com. v. Funk*, 323 Pa. 390, where it is said (p. 395) : "It [the legislature] alone has the power to regulate the manner and circumstances under which automobiles may be operated upon the highways of the Commonwealth. This power is vested in the legislature, and is based not only upon its right to control and regulate the use of the highways, but is buttressed by the inherent police power of the state."

The control of its highways and the right of the state to regulate the use of motor vehicles operated thereon, has been upheld also by the Supreme Court of the United States: *New Orleans Gas Co. v. Louisiana Light Co.*, 115 U. S. 650; *Hendrick v. Maryland*, 235 U. S. 610; *Kane v. New Jersey*, 242 U. S. 160; *Hodge Co. v. Cincinnati*, 284 U. S. 335; *South Carolina State Hwy. Dept. v. Barnwell Bros., Inc.*, 303 U. S. 177. In *Hess v. Pawloski*, 274 U. S. 352, Mr. Justice BUTLER said (p. 356) : "Motor vehicles are dangerous machines; and, even when skillfully and carefully operated, their use is attended by serious dangers to persons and property. In the public interest the state may make and enforce regulations reasonably calculated to promote care on the part of all residents and nonresidents alike, who use its highways."

While plaintiffs do not directly challenge the scope of the police power of the state, they do take exception to the exercise of that power by the act here in question as being arbitrary and unrelated to public safety.

In view of the convincing evidence on the part of defendants of the many dangers inseparably connected with this method of transporting automobiles, it seems to us the fact is conclusively established that the presence of a car over the cab of a truck-tractor is unsafe. The findings of the court below in this regard are fully supported by the testimony of witnesses well qualified by technical training to express an opinion upon the subject,[2] and by practical experience in the operation of such vehicles to testify to the dangers attending their use.[3] There is, therefore, no merit in the contention of plaintiffs that the provisions of the Section are arbitrary and not reasonably related to public safety, or that the car over cab carriage of autombiles is not a proper subject for legislative prohibition.

In this connection it may again be said that a system of general regulation, such as we have in the Vehicle

---

[2] Among the witnesses called on behalf of defendants were Professor August Ulmann, Jr., a member of the faculty of the Towne Scientific School of the University of Pennsylvania, a mechanical engineer and physicist; and Dr. Henry F. King, an automotive engineer connected with the Massachusetts Institute of Technology, and also consulting engineer for some of the larger automobile companies. These witnesses, by calculations based upon actual measurements and study of the equipment used by plaintiffs, and by exhibits showing the formulæ used in connection with the law of physics, whereby the center of gravity is determined, testified with respect to the technical questions involved whether the car over the cab causes excess weight on the front wheels, and detrimentally affects steering, braking, headlights, front tires, front axles, vision, and strength of chains used in anchoring the automobile over the cab. In their opinion such equipment is dangerous and unsafe.

[3] Defendants also called Alfred Baxter, Harry Edwards and Leroy Marshall, who have been employed and had experience as drivers of this type of vehicle. Their testimony was to the effect that the vision of the operator thereof was obstructed; that the top-heavy weight over the cab interfered with steering and braking, particularly upon curves, because of the slow response of the steering gear, and the inside pull, with a resultant difficulty in straightening out after completion of curves.

Code, prescribing the manner and by whom motor vehicles shall be operated upon the highways of the state, is necessary to promote the safety of persons and property within the state. If an exercise of this power, such as is found in the act before us, be not unreasonable, arbitrary or capricious, and the means selected shall have a real and substantial relation to the object sought to be attained, it does not constitute the taking of property without due process of law. The procedure whereby the purpose is achieved is beyond the power of the courts to question. There is no appeal to the courts from the judgment of the legislature as to the wisdom or policy which the Commonwealth shall adopt. Our inquiry is limited to the determination of the question whether the means of regulation chosen by the legislature are "reasonably adapted to the end sought." To go further would be to usurp powers committed to another department of government: *Powell v. Com.*, 114 Pa. 265, 127 U. S. 678; *Com. v. Vrooman*, 164 Pa. 306; *Rohrer v. Milk Control Board*, 322 Pa. 257; *C., B. & Q. R. R. Co. v. Maguire*, 219 U. S. 549; *Nebbia v. N. Y.*, 291 U. S. 502. In the latter case, Mr. Justice ROBERTS said (p. 537) : "If the laws passed are seen to have a reasonable relation to a proper legislative purpose, and are neither arbitrary nor discriminatory, the requirements of due process are satisfied, and judicial determination to that effect renders a court *functus officio.*"

Where, as in the present case, the legislature in its judgment supported by facts known to it, determines that the operation upon the highways of the state of a dangerous and unsafe type of vehicle must be prohibited, such a regulation does not violate the guaranty of due process, in the absence of discrimination or arbitrary abuse of power.

A similar question was presented in the recent case of *South Carolina State Hwy. Dept. v. Barnwell Bros., Inc.*, supra, where a statute of South Carolina prohibited the use on the state highways of motor trucks whose

width exceeded ninety inches, and whose weight including load exceeded 20,000 pounds. One of the grounds upon which the statute was attacked was that it infringed the due process clause. In sustaining the statute as a safety measure and a means of securing the economical use of the state's highways, Mr. Justice STONE said (p. 190) : ". . . the judicial function, under the commerce clause as well as the Fourteenth Amendment, stops with the inquiry whether the state legislature in adopting regulations such as the present has acted within its province, and whether the means of regulation chosen are reasonably adapted to the end sought . . . And in reviewing a state highway regulation where Congress has not acted, a court is not called upon, as are state legislatures, to determine what, in its judgment, is the most suitable restriction to be applied of those that are possible, or to choose that one which in its opinion is best adapted to all the diverse interests affected. . . . When the action of a legislature is within the scope of its power, fairly debatable questions as to its reasonableness, wisdom and propriety are not for the determination of courts, but for the legislative body, on which rests the duty and responsibility of decision."

For the same reasons there is no merit in the plaintiffs' contention that the act here assailed denies to them the equal protection of the laws and constitutes special legislation. This is based upon the charge that equipment of the type operated by them is discriminated against in favor of other types whereby part of the cargo is carried over the cab. Plaintiffs sought to establish by photographic evidence that trucks operate upon the highways of the state with portions of their cargoes extended over the head of the operator of the truck.

Here the evil sought to be prevented is the practice of carrying an automobile over the cab of a vehicle. The legislature by enacting Section 1033(c) has efficiently directed its effort toward the prohibition of that prac-

tice. That other persons in the trucking business may continue to engage in practices not prohibited by Section 1033(c), but equally and similarly dangerous, is not enough to render the Section in question unconstitutional, because the right of the legislature to classify with reference to the particular evil sought to be prevented is undoubted. An act designed to remedy an existing ill may not be declared invalid because it leaves other ills unremedied. It is not required that the entire field of possible abuses be covered: *Patsone v. Com. of Pa.*, 232 U. S. 138; *Keokee Consolidated Coke Co. v. Taylor*, 234 U. S. 224; *Clark v. Paul Gray, Inc., et al.*, 83 L. Ed. (Adv.) 736.

In the Keokee case, supra, Mr. Justice HOLMES aptly said (p. 227): ". . . it is established by repeated decisions that a statute aimed at what is deemed an evil, and hitting it presumably where experience shows it to be most felt, is not to be upset by thinking up and enumerating other instances to which it might have been applied equally well, so far as the court can see. That is for the legislature to judge unless the case is very clear. . . ."

Two questions arising under the "commerce clause" of the Federal Constitution remain for consideration. First, Is the sub-section invalid because it imposes an unreasonable burden upon interstate commerce? Second, Has Congress by the Motor Carrier Act, 1935, (49 U. S. C. A. Secs. 301-327) and the Interstate Commerce Commission, by regulations issued pursuant thereto, occupied the entire field of regulation of interstate motor carriers?

Much stress is laid upon the proposition that the enforcement of the act will place an unreasonable burden upon interstate commerce, which, plaintiffs say, is forbidden under the decisions construing the commerce clause. It is asserted that the subject is one which requires uniformity of regulation throughout the states, otherwise different standards, designs, equipment and

28

rules with respect to the vehicles used might be prescribed by the various states through which they are operated; that such regulation, if imposed at all, must be through the action of Congress, which alone can establish a uniform rule.

The answer to this contention of plaintiffs is to be found in the recent case of *Kelly v. Washington,* 302 U. S. 1, wherein there was challenged a state law relating to the inspection and regulation of vessels. The Supreme Court sustained the statute in relation to the inspection of the hull and machinery of vessels, and held that there was a field in which the state law could operate without conflicting with federal laws. It said (p. 13) : "In the instant case, . . . the state law touches that which the federal laws and regulations have left untouched."

That case is illustrative of the principle which we think is properly applicable here,—that in the absence of the exercise of federal authority the state is free to exert an essential protective power, even though interstate commerce is directly affected.[4] Mr. Chief Justice HUGHES therein stated the rule in these words (p. 9) : "Under our constitutional system, there necessarily remains to the states, until Congress acts, a wide range for the permissible exercise of power appropriate to their territorial jurisdiction, although interstate commerce may be affected . . . (p. 14). When the state is seeking to protect a vital interest, we have always been slow to find that the inaction of Congress has shorn the state of the power which it would otherwise possess."

Plaintiffs urge, however, that the rapid development of the automotive industry and its use as a medium of transportation, demand national control in order that the flow of interstate commerce involving such facilities shall be free and untrammeled. It is claimed that the

---

[4] See the latest decision of the Supreme Court upon the subject in *Eichholz v. Public Service Commission,* 83 Law Ed. (Adv.) 505, 507.

present act places an arbitrary burden upon such traffic, since automobiles are manufactured in the great centers of automobile building west of Pennsylvania, and all movements of such vehicles to the eastern states must pass through this state in interstate commerce; that while in terms the act applies equally to vehicles moving in intrastate and interstate traffic, its provisions in consequence discriminate against interstate operators.

Plaintiffs' contention, however, ignores the fact that protection against accidents on the highways is primarily a state function. It is essentially a local problem, and involves conditions calling for accident prevention which are related to the character of the highways and the topography of the country which such vehicles traverse. According to the evidence, the terrain of Pennsylvania as a whole is "rough and broken up" with numerous hills, mountains and sharp curves. It has been found that these physical features increase the danger of operation of such equipment upon the highways of the Commonwealth. These vehicles in making sharp curves, particularly on the steep grades in the mountainous regions, which must be traveled to reach the eastern seaboard, completely block the highway. Their length and their height make it necessary to swing them to the center of the highway, with attendant dangers to oncoming traffic. They are thus a continuing menace to other users of the highway, and far more dangerous when operated upon the highways of this state, with their steep grades and sharp curves, than upon the roads of most states in the eastern portion of the United States.

The extent to which interstate commerce may be affected by a state law designed to promote safety upon its highways is thus definitely announced by Mr. Justice STONE in the South Carolina case, supra. He says (p. 189) : "The nature of the authority of the state over its highways has often been pointed out by this Court. It may not, under the guise of regulation, dis-

criminate against interstate commerce. But 'in the absence of national legislation especially covering the subject of interstate commerce, the state may rightly prescribe uniform regulations adapted to promote safety upon its highways and the conservation of their use, applicable alike to vehicles moving in interstate commerce and those of its own citizens.' . . . This formulation has been repeatedly affirmed, [citing cases] [5] and never disapproved. This Court has often sustained the exercise of that power although it has burdened or impeded interstate commerce. . . . In each of these cases regulation involves a burden on interstate commerce. But so long as the state action does not discriminate, the burden is one which the Constitution permits, because it is an inseparable incident of the exercise of a legislative authority, which, under the Constitution, has been left to the states."

Of course, there always remains the plenary power of Congress, which may determine that the burdens imposed by state regulation upon interstate commerce are too great, and, by legislation to secure uniformity and to protect the national interest in commerce, Congress may curtail the exercise of the state's regulatory power: *South Carolina State Hwy. Dept. v. Barnwell Bros. Inc.*, supra. For the reasons stated and upon these authorities, the conclusion of the court below must be sustained that "Section 1033(c) is not unconstitutional as an unreasonable and invalid burden on interstate commerce, and does not discriminate against interstate commerce."

---

[5] The cases cited in the opinion are *Morris v. Duby*, 274 U. S. 135, 143; *Clark v. Poor*, 274 U. S. 554, 557; *Sprout v. South Bend*, 277 U. S. 163, 169; *Sproles v. Binford*, 286 U. S. 374, 389, 390; cf. *Morf v. Bingaman*, 298 U. S. 407.

See also *Hendrick v. Maryland*, 235 U. S. 610; *Kane v. New Jersey*, 242 U. S. 160; *Interstate Busses Corp. v. Blodgett*, 276 U. S. 245; *Bradley v. P. U. C.*, 289 U. S. 92.

The second question arising under the commerce clause is whether Congress, by the enactment of the Motor Carrier Act, 1935, has assumed exclusive control of the regulation of interstate motor carriers. Plaintiffs assert that whatever regulatory power the state possessed has been entirely superseded, as Congress has manifested an intention of exercising its paramount authority over the entire subject. However, it clearly appears from the cases decided in the federal courts, since the effective date of the act, that the position of plaintiffs cannot be supported. The construction placed thereon by the Supreme Court, particularly where questions of safety involving the exercise of the state's police power are concerned, is not to set aside state regulation, but, on the contrary, to sustain such action until a federal law, or regulation, direct, positive and irreconcilable with the statute of the state, has taken its place.

It is not to be questioned that Congressional legislation upon any phase of interstate commerce supersedes all state regulation in the same field, and that if Congress by the enactment of the Motor Carrier Act has taken over the entire supervision and control of interstate transportation by motor vehicles, then in deference to the federal law, all state regulation becomes unenforceable and is invalidated.

Notwithstanding this established rule, there is a fundamental principle in this connection which must not be overlooked. Congress in its judgment may decide to occupy only a portion of the field of regulation, and may leave to the state matters not affected by federal legislation. It may limit itself to a restricted field of regulation, and leave untouched matters of state or local concern which call for the exercise by the state of its police power. As we have seen, this was the rule so carefully laid down by the Supreme Court in *Kelly v. Washington*, supra, and which the Chief Justice announced in these words, (p. 10) : "There is no consti-

tutional rule which compels Congress to occupy the whole field. Congress may circumscribe its regulation and occupy only a limited field. When it does so, state regulation outside that limited field, and otherwise admissible, is not forbidden or displaced. The principle is thoroughly established that the exercise by the state of its police power, which would be valid if not superseded by federal action, is superseded only where the repugnance or conflict is so 'direct and positive' that the two acts cannot 'be reconciled or consistently stand together.' "[6]

We believe the principle so approved rules the present case,—that where Congress, in acting, indicates an intention to take over a limited field of regulation, the state, within the area left unoccupied, may continue to exercise its police power in the interest of safety, provided that the acts so passed are not in conflict with federal legislation. The question then arises,—is there any provision contained in the federal act which assumes to provide for the safety of persons and property upon the highways of the several states, or which regulates the operation thereon of vehicles which are a menace to public safety?

A study of the provisions of the Motor Carrier Act reveals the purpose of Congress to confer upon the Interstate Commerce Commission full jurisdiction in the commercial, financial and business aspects of interstate highway transportation and to leave untouched in the hands of the states control over the preservation of the roads and the maintenance of safety thereon. This was the view adopted in *Thompson v. McDonald,* 95 Fed. (2d) 937, (C. C. A. 5th Cir., 1938) where it is

---

[6] Among the cases cited in the opinion in support of this principle are: *Reid v. Colorado,* 187 U. S. 137, 148; *Savage v. Jones,* 225 U. S. 501, 533; *Atlantic Coast Line v. Georgia,* 234 U. S. 280, 293, 294; *Atchison, T. & S. F. Ry. Co. v. Railroad Commission,* 283 U. S. 380, 392, 393; *Mintz v. Baldwin,* 289 U. S. 346, 350.

held (p. 943) : "The Interstate Commerce Commission has jurisdiction over the commercial considerations appertaining to the interstate truck business, but the preservation and safety of the roads themselves have been left with the state commissions. It is well settled that if Congress occupies only a limited field, then state regulation is not prohibited."

This intent of Congress to restrict the act to the regulation of commercial practices involved in motor transportation rather than to considerations of safety, clearly appears from Section 202 of the act (49 U. S. C. A. 302) which provides in part as follows: "(a) It is hereby declared to be the policy of Congress to regulate transportation by motor carriers in such manner as to recognize and preserve the inherent advantages of, and foster sound economic conditions in, such transportation and among such carriers in the public interest; promote adequate, economical, and efficient service by motor carriers, and reasonable charges therefor, without unjust discriminations, undue preferences or advantages, and unfair or destructive competitive practices; . . ."

While Section 204(a) 1, 2 and 3 of the act (49 U. S. C. A. 304) does confer upon the Commission power to establish reasonable requirements concerning safety of operation and equipment, the general language of this Section is necessarily modified and limited by the specific direction to the Commission set forth in Section 225 (49 U. S. C. A. 325) of the act "to investigate and report on the need for federal regulation. . . ." Consequently it would appear that Congress intended to leave the regulation of such matters as safety and preservation of the highways in the control of the states until a future time.

This conclusion was reached by the Supreme Court in the recent case of *Welch Co. v. New Hampshire,* 306 U. S. 79, where it was held that a state law limiting the continuous hours on duty of the operators of trucks

was not superseded by the Federal Motor Carrier Act. As Mr. Justice BUTLER said (p. 441) : "In view of the efforts of governmental authorities everywhere to mitigate the destruction of life, limb and property resulting from the use of motor vehicles, it cannot be inferred that Congress intended to supersede any state safety measure prior to the taking effect of a federal measure found suitable to put in its place. Its purpose to displace the local law must be definitely expressed. . . . Plainly Congress by mere grant of power to the Interstate Commerce Commission did not intend to supersede state police regulations established for the protection of the public using state highways."

Again, reference is made in this connection to the decision of the Supreme Court in *South Carolina State Hwy. Dept. v. Barnwell Bros., Inc.,* supra, where it was held that notwithstanding the Federal Motor Carrier Act, 1935, the state retained the power, in order to conserve its highways and maintain safety thereon, to legislate respecting weights and widths of vehicles using its highways.

A review of the cases decided in the Federal Courts since the Motor Carrier Act became effective indicates that state regulations pertaining to general safety problems have not been superseded. The recent decisions of the Supreme Court, as we have seen, have held that state laws relating to safety and protection of the highways are not displaced until Congress shall have supplied a federal law or regulation to take the place of the state law. Congress has not yet taken such action, and our conclusion is that neither the Motor Carrier Act, 1935, nor any regulation of the Interstate Commerce Commission has superseded the legislative power of this state to enact and enforce Section 1033(c) of the Vehicle Code.

In arriving at this conclusion we have not overlooked the report of the Interstate Commerce Commission orig-

inally dated December 23, 1936,[7] which is printed as an appendix to plaintiffs' brief. This report was issued upon the plaintiffs' petition with the Interstate Commerce Commission to reopen the proceedings Ex Parte No. Mc-4, which was filed by the plaintiffs after the entry of the decree nisi by the court below, and it was not considered by the court below, nor is it part of the record on this appeal. The report is negative in character, is based entirely upon ex parte testimony, and a careful study thereof discloses no intention that it was to constitute a formal rule or regulation of the Commission with respect to the operation of car over the cab equipment. Certainly it cannot be regarded as having a purpose to replace existing state law upon the subject.

Since the argument of this appeal, an amendment to Section 1033 (c) was signed by the Governor of the Commonwealth on June 27, 1939. It reads as follows: "No person shall operate a vehicle on the highways of this Commonwealth carrying any other vehicle the weight of which is directly above the cab of the carrier vehicle or directly over the head of the operator of such carrier vehicle."

As the amending act contains no effective date, its provisions become operative from and after September 1, 1939, in accordance with Section 4 of the Statutory Construction Act of May 28, 1937, P. L. 1019, 1020. Therefore the present Section 1033 (c) of the Act of 1937 remains in full force and effect until August 31, 1939, and prosecutions for violations thereof may be brought during the months of July and August of this year. In consequence, this appeal has not become moot.

However, we have considered the language of the amendment and are of opinion that no essential change

---

[7] This report is captioned "Ex Parte. No. Mc-4 In the Matter of Qualifications of Employees and Safety of Operation and Equipment of Common and Contract Carriers by Motor Vehicles. In re Car Over Cab Operations."

is made in the prohibition of the statute. Whatever may have been the legislative purpose in promulgating the amendment, it has not modified the effect of this Section.

It is to be seen that the present act forbids the carrying of any vehicle *"any part of which* is above the cab of the carrier vehicle," while the amendment forbids the carrying of any vehicle *"the weight of which* is *directly* above the cab of the carrier vehicle." From the evidence in the present record it would seem to us that the detrimental effect upon balance, steering, braking and vision remains the same, whether any part of the carried vehicle, or of its weight, rests upon the cab, or is directly above the cab of the carrier vehicle. Accordingly the amendment must be read as intending that the carrying of any portion of the weight of the carried vehicle directly over the cab is forbidden. This in effect is the prohibition of the present Section.

The decree of the court below dismissing the bill of complaint is affirmed. Appellants to pay the costs.