**Dennis G. KRALL, Appellant,**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING.**

Commonwealth Court of Pennsylvania.

Argued April 17, 1996.

Decided Aug. 21, 1996.

---

Martin J. King, for Appellant.

Harold H. Cramer, Assistant Chief Counsel, for Appellee.

Before COLINS, President Judge, and DOYLE, SMITH, PELLEGRINI, FRIEDMAN, KELLEY and FLAHERTY, JJ.

SMITH, Judge.

Dennis G. Krall (Krall) appeals the August 8, 1995 order of the Court of Common Pleas of Bucks County denying his appeal and reinstating the suspension of his operating privileges for one year. The questions presented on appeal are whether an operating privilege is a constitutionally protected right; whether the suspension of Krall's operating privilege is in violation of the Fifth Amendment to the United States Constitution,

where accomplished in a civil proceeding subsequent to but based upon a prior criminal conviction for driving under the influence; and whether a one-year suspension of operating privileges, based upon a conviction for driving under the influence, is purely remedial or embodies some element of punishment.

In 1994, Krall pleaded guilty to driving under the influence (DUI), was sentenced to 48 hours of imprisonment and was fined. As a result of this conviction, the Pennsylvania Department of Transportation, Bureau of Driver's Licensing (DOT), issued an official notice suspending Krall's operating privileges for one year pursuant to Section 1532(b)(3) of the Vehicle Code, *as amended*, 75 Pa.C.S. § 1532(b)(3).[1] Krall appealed to the Court of Common Pleas, which affirmed the suspension of his operating privileges. Krall then appealed to this Court, whose scope of review is limited to determining whether the trial court's findings of fact are supported by substantial evidence, whether the trial court committed an error of law or whether the trial court violated Krall's constitutional rights. *Dardozzi v. Department of Transportation, Bureau of Driver Licensing,* 660 A.2d 205 (Pa.Cmwlth.1995).

First, Krall contends that an operating privilege is a property right protected by the United States and Pennsylvania Constitutions. This Court disagrees. Krall incorrectly cites *Mackey v. Montrym,* 443 U.S. 1, 99 S.Ct. 2612, 61 L.Ed.2d 321 (1979), and *Bell v. Burson,* 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971), to support his contention. In *Mackey* and *Bell,* the Supreme Court acknowledged that a licensee has an important interest in retaining his or her operating privilege, which should be afforded the protection of procedural due process; however, the Court did not characterize such an interest as a fundamental or a property right.

In addition, Krall's characterization of an operating privilege as a property right is not supported by statutory language. The statutory definition of "operating privilege" states that it is "[t]he privilege to apply for and

---

**1.** The relevant portion of Section 1532(b)(3) states:

> The department shall suspend the operating privilege of any driver for 12 months upon

receiving a certified record of the driver's conviction of section 3731 (relating to driving under influence of alcohol or controlled substance)....

obtain a license ... but not a contract, property right or civil right." Section 102 of the Vehicle Code, *as amended,* 75 Pa.C.S. § 102. Although Pennsylvania courts have recognized the value of an operating privilege and have stated that a driver must be afforded due process protection before the Commonwealth may revoke or suspend such privileges, the courts have expressly refused to characterize an operating privilege as a fundamental or a property right. "Operating a motor vehicle upon a Commonwealth highway is not a property right but a 'privilege'." *Plowman v. Department of Transportation, Bureau of Driver Licensing,* 535 Pa. 314, 317, 635 A.2d 124, 126 (1993); *see also Sheakley v. Department of Transportation,* 99 Pa. Cmwlth. 328, 513 A.2d 551 (1986), *appeal denied,* 515 Pa. 586, 527 A.2d 546 (1987). This Court accordingly concludes that Krall's contention is without merit.

■ Next, Krall contends that the suspension of his operating privilege following his criminal conviction for DUI violates the Double Jeopardy Clauses of the United States and Pennsylvania Constitutions.[2] The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution states that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb...." The Double Jeopardy Clause protects against multiple prosecutions for the same offense after an acquittal or conviction and precludes the imposition of multiple punishments for the same offense. Generally, civil sanctions imposed by an administrative agency do not trigger double jeopardy protection.[3] *Sweeny v. State Board of Funeral Directors,* 666 A.2d 1137 (Pa.Cmwlth.1995). However, a civil sanction may constitute punishment for double jeopardy purposes if the

sanction "may not fairly be characterized as remedial, but only as a deterrent or retribution." *United States v. Halper,* 490 U.S. 435, 449, 109 S.Ct. 1892, 1902, 104 L.Ed.2d 487 (1989); *see also United States v. Ursery,* —— U.S. ——, 116 S.Ct. 1539, 134 L.Ed.2d 644 (1996).

In *Halper,* the Supreme Court held that a civil penalty of a large fine for violations of the False Claims Act constituted punishment for purposes of double jeopardy because the amount of the fine was unrelated to the damages suffered by the government and was designed to punish violators. Krall argues that because one of the purposes of suspending the operating privileges of drivers convicted of DUI is to deter future DUI offenses, the suspension of his operating privilege, although a civil penalty, constitutes punishment for double jeopardy purposes pursuant to the Supreme Court's holding in *Halper.*

Initially, this Court must emphasize that Krall has incorrectly interpreted *Halper.* Krall cites *Halper* for the proposition that if the purposes of a sanction are not *solely* remedial, then it constitutes punishment for the purposes of double jeopardy. In *Halper,* however, the Supreme Court stated that a civil sanction may constitute punishment for double jeopardy purposes if the sanction "may not fairly be characterized as remedial, but *only* as a deterrent or retribution." *Id.* at 449, 109 S.Ct. at 1902 (emphasis added). Thus the mere fact that a sanction may indirectly deter future criminal activity does not preclude a determination that the sanction is remedial. "[E]ven remedial sanctions carry the sting of punishment." *Id.* at 447 n. 7, 109 S.Ct. at 1901 n. 7.

---

**2.** Although Krall contends that the suspension of his operating privileges also violates Article I, § 10 of the Pennsylvania Constitution, the Supreme Court has concluded that the Pennsylvania Constitution provides no greater protection than the Double Jeopardy Clause of the Fifth Amendment. *Commonwealth v. Tabb,* 491 Pa. 372, 421 A.2d 183 (1980), *cert. denied,* 450 U.S. 1000, 101 S.Ct. 1708, 68 L.Ed.2d 202 (1981). Thus this Court will only address Krall's federal double jeopardy claims. The Double Jeopardy Clause was made applicable to the States through the Due Process Clause of the Four-

teenth Amendment. *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).

**3.** This Court recently concluded that a conviction for DUI and operating privilege suspension do not constitute separate proceedings for the purposes of double jeopardy. *See Martin v. Department of Transportation, Bureau of Driver Licensing,* 672 A.2d 397 (Pa.Cmwlth.1996) (license suspensions flow automatically from criminal convictions and although conviction and suspension did not occur at same time, they clearly resulted from single undertaking).

Rather, *Halper* requires this Court to determine the purposes actually served by the sanction in question. This Court has previously determined that "driver revocation proceedings are remedial sanctions and are civil in nature, designed to protect the public from unsafe drivers." *Drogowski v. Commonwealth*, 94 Pa.Cmwlth. 205, 503 A.2d 104, 107 (1986), *appeal denied*, 516 Pa. 619, 531 A.2d 1120 (1987)(citing *Zanotto v. Department of Transportation*, 83 Pa.Cmwlth. 69, 475 A.2d 1375 (1984)). Consequently, this Court concludes that the suspension of Krall's operating privilege following his criminal conviction for DUI does not violate the Double Jeopardy Clause of the United States Constitution.

Krall argues that this Court should not rely on its holdings in *Drogowski* and *Zanotto* because both cases were decided prior to *Halper*. Upon further research, this Court has found that other courts, applying the principles of *Halper*, have rejected the contention that the suspension of operating privileges constitutes punishment for the purposes of double jeopardy. *See Davidson v. MacKinnon*, 656 So.2d 223 (Fla.Dist.Ct.App. 1995), *review denied*, 662 So.2d 931 (Fla. 1995); *State v. Funke*, 531 N.W.2d 124 (Iowa 1995); *State v. Uncapher*, 70 Ohio Misc.2d 4, 650 N.E.2d 195 (Mun.Ct.1995); *Johnson v. State*, 95 Md.App. 561, 622 A.2d 199 (1993); *Freeman v. State*, 611 So.2d 1260 (Fla.Dist. Ct.App.1992), *review denied*, 623 So.2d 493 (Fla.1993), *cert. denied sub nom. Lindemann v. Florida*, 510 U.S. 957, 114 S.Ct. 415, 126 L.Ed.2d 361 (1993); *Butler v. Department of Public Safety and Corrections*, 609 So.2d 790 (La.1992); *State v. Strong*, 158 Vt. 56, 605 A.2d 510 (1992); *State v. Nichols*, 169 Ariz. 409, 819 P.2d 995 (App.1991); *Ellis v. Pierce*, 230 Cal.App.3d 1557, 282 Cal.Rptr. 93 (1991).

Although Krall argues that a more appropriate remedial sanction would be to prohibit individuals convicted of DUI from consuming alcohol, this Court concludes that the suspension of Krall's operating privilege effectively advances the Commonwealth's legitimate interest in protecting the public from unsafe drivers. Based upon the foregoing discussion, this Court affirms the order of the trial court denying Krall's appeal and reinstating the suspension of his operating privileges for one year.

### ORDER

AND NOW, this 21st day of August, 1996, the order of the Court of Common Pleas of Bucks County is affirmed.

KELLEY, Judge, dissenting.

I respectfully dissent. I believe that the order of the trial court should be reversed.

In its opinion, the majority first concludes that an operating privilege is not a constitutionally protected property right. I disagree with this conclusion.

I recognize that our Supreme Court has stated that "[o]perating a motor vehicle upon a Commonwealth highway is not a property right but a 'privilege'." *Plowman v. Department of Transportation, Bureau of Driver Licensing*, 535 Pa. 314, 317, 635 A.2d 124, 126 (1993). However, our Supreme Court has based this determination upon precedent which is outdated in today's modern society. *See Maurer v. Boardman*, 336 Pa. 17, 7 A.2d 466 (1939), *aff'd sub nom. Maurer v. Hamilton*, 309 U.S. 598, 60 S.Ct. 726, 84 L.Ed. 969 (1940). It is time that our jurisprudence recognize the realistic changes that have transpired since the automobile succeeded the horse and buggy.

In the early part of this century, there was no highway system. Transportation was by a private or public carrier serving the centered populations. The rural agricultural population was largely stationary and was transported by animal energy. The operation of a motor vehicle by an individual was neither common nor necessary.

Today, the explosion of industrialization and the transient nature of society have placed almost total reliance upon individual transportation. A public policy of fostering the development of interstate highways and the diminished availability of public transportation have served to transform the automobile into an essential tool of modern society. As such, the operation of a motor vehicle by an individual can no longer be construed as merely a privilege, but must be considered a right.

The development of a system of interstate highways emphasizes the importance of the automobile in today's mobile society. The purpose of the national highway system, as

described in 23 U.S.C. § 103(b)(1), is "to provide an interconnected system of principal arterial routes which will serve major population centers, international border crossings, ports, airports, public transportation facilities, and other intermodal transportation facilities and other major travel destinations; meet national defense requirements; and serve interstate and interregional travel." The importance of the automobile to societal growth and development has further been emphasized by the Federal government in 23 U.S.C. § 143(a) which provides as follows:

In order to promote the desirable development of the Nation's natural resources, to revitalize and diversify the economy of rural areas and smaller communities, to enhance and disperse industrial growth, to encourage more balanced population patterns, to check, and, where possible, to reverse current migratory trends from rural areas and smaller communities, and to improve living conditions and the quality of the environment, the Secretary is authorized to make grants to States for projects for the construction, reconstruction, and improvement of development highways on a Federal-aid system (other than the Interstate System) to serve and promote the development of economic growth centers and surrounding areas, encourage the location of business and industry in rural areas, facilitate the mobility of labor in sparsely populated areas, and provide rural citizens with improved highways to such public and private services as health care, recreation, employment, education, and cultural activities, or otherwise encourage the social and economic development of rural communities, and for planning, surveys, and investigations in connection therewith.

The Commonwealth of Pennsylvania has recognized that operating a motor vehicle upon its highways is essential to an individual's ability to be a productive member of society. This recognition by the Pennsylvania General Assembly is evident in section 1553 of the Vehicle Code, 75 Pa.C.S. § 1553, which provides as follows:

(1) The department shall issue an occupational limited license under the provisions of this section to a driver whose operating privileges have been suspended and is not prohibited under any other provision in this section.

Thus, even when an individual's operating privileges have been suspended, that individual can still obtain an occupational limited license so as to enable that person to drive to work and continue earning a living.

Contrary to the opinion of the majority in the present case, the Supreme Court in *Mackey v. Montrym*, 443 U.S. 1, 99 S.Ct. 2612, 61 L.Ed.2d 321 (1979), stated that a driver's interest in the continued possession and use of his license is a substantial property interest which should be protected. As such, the Due Process Clause applies to a state's suspension or revocation of a driver's license. *Mackey*, 443 U.S. at 10, 99 S.Ct. at 2617.

In light of the dramatic changes that have occurred to society and its modes of transportation during the last century, I believe that the possession and use of an operator's license is no longer merely a privilege. It is a right. Therefore, the suspension or revocation of a driver's operating privileges must be subject to strict procedural due process.

In its opinion, the majority also concludes that the suspension of a licensee's operating privileges following his criminal conviction for DUI does not violate the Double Jeopardy Clause of the United States Constitution. I respectfully disagree.

In *United States v. Halper*, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), the Supreme Court considered whether and under what circumstances a civil penalty could constitute "punishment" for purposes of double jeopardy analysis. In its decision, the Supreme Court stated that "a civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand the term." *Halper*, 490 U.S. at 448, 109 S.Ct. at 1902. The Supreme Court held that under the Double Jeopardy Clause, a defendant who has already been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, but only as a deterrent or retribution. *Id.* at 448–49, 109 S.Ct. at 1901–02.

In the present case, the majority determines, based on *Halper*, that the mere fact that a sanction may indirectly deter future criminal activity does not preclude a determination that the sanction is remedial rather than punitive. I recognize that the Commonwealth has a legitimate interest in protecting the public from unsafe drivers. However, I believe that a license suspension cannot fairly be characterized as remedial, but rather constitutes punishment for purposes of double jeopardy analysis.

If the purpose of suspending a driver's operating privileges were solely remedial, then this sanction would be imposed only where necessary to protect the public from dangerous drivers. Clearly, the suspension of a driver's operating privileges is not limited to such circumstances. It is well settled that a license suspension can be imposed as a penalty for underage drinking, even where the offense does not involve the operation of a motor vehicle.[1] While license suspensions may deter adolescents from future misbehavior, they are not a remedy for underage drinking. Thus, a license suspension cannot necessarily be characterized as remedial. Rather, I believe that a license suspension constitutes a punitive sanction for licensee misconduct.[2] Moreover, because the suspension of a driver's operating privileges is punitive rather than remedial, the authority for license suspensions should rest with the courts of this Commonwealth instead of with the Department of Transportation.

I would reverse the trial court.

---

1. Section 6310.4 of the Crimes Code, 18 Pa.C.S. § 6310.4, governs the restriction of operating privileges. The general rule set forth in section § 6310.4(a) provides as follows:

> Whenever a person is convicted or is adjudicated delinquent or is admitted to any preadjudication program for a violation of section 6307 (relating to misrepresentation of age to secure liquor or malt or brewed beverages), 6308 (relating to purchase, consumption, possession or transportation of liquor or malt or brewed beverages) or 6310.3 (relating to carrying a false identification card), the court, including a court not of record if it is exercising jurisdiction pursuant to 42 Pa.C.S. § 1515(a) (relating to jurisdiction and venue), shall order the operating privilege of the person suspended. A copy of the order shall be transmitted to the Department of Transportation.

*See also Commonwealth v. Strunk*, 400 Pa. Superior Ct. 25, 582 A.2d 1326, *petition for allowance of appeal denied*, 528 Pa. 630, 598 A.2d 283 (1991) (upholding the suspension of underage defendant's driver's license, based on conviction for possession of alcohol, although violation was not connected to operation or possession of motor vehicle).

2. In its opinion, the majority also cites to *United States v. Ursery*, —— U.S. ——, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996) for the proposition that a civil sanction may constitute punishment for double jeopardy purposes where the sanction only serves as a deterrent or retribution. The Supreme Court in *Ursery* held that *in rem* civil forfeitures were neither "punishment" nor criminal sanctions for purposes of the Double Jeopardy Clause.

While *Ursery* dealt with *in rem* civil forfeitures for purposes of the Double Jeopardy Clause, the present case is more analogous to *Halper* which dealt with *in personam* civil penalties under the Double Jeopardy Clause. The distinction between these two types of cases was enunciated by the Supreme Court in *Ursery* when it stated that it was difficult to see how the rule of *Halper* could be applied to civil forfeitures. *Ursery*, —— U.S. at ——, 116 S.Ct. 2135, 2137, 135 L.Ed.2d 549. Thus, while *in rem* civil forfeitures may not be considered punitive for purposes of the Double Jeopardy Clause, I do not believe that the same can be said about *in personam* civil penalties, namely license suspensions.