Cheryl CORRELL, Appellant,

v.

COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING.

Commonwealth Court of Pennsylvania.

Argued Oct. 7, 1998.

Decided Feb. 18, 1999.

David M. McGlaughlin, Philadelphia, for appellant.

Marc A. Werlinsky, Harrisburg, for appellee.

Before COLINS, President Judge, DOYLE, J., SMITH, J., FRIEDMAN, J., KELLEY, J., FLAHERTY, J., and LEADBETTER, J.

LEADBETTER, Judge.

Cheryl Correll appeals from the order of the Court of Common Pleas of Chester County, Civil Division, dated January 15, 1998, which denied her appeal and reinstated a one year suspension of her operating privileges imposed pursuant to Section 1581 of the Vehicle Code, 75 Pa.C.S, § 1581 ("Interstate Compact" or simply "Compact"). Correll challenges the constitutionality of the Compact on the grounds that it violates the double jeopardy, due process, and equal protection clauses of the United States and Pennsylvania Constitutions. We find no merit in Correll's challenge and, therefore, affirm the judgment of the trial court.

Correll, a Pennsylvania licensed driver, was cited in the state of New Jersey for

driving while under the influence of alcohol (DUI) on July 21, 1997. Correll was convicted of that offense on September 25, 1997. In compliance with the Interstate Compact, the New Jersey Division of Motor Vehicles reported Correll's conviction to the Pennsylvania Department of Transportation, Bureau of Driver Licensing (Bureau).[1] The Bureau, by official notice mailed October 17, 1997, notified Correll that her license would be suspended for one year, effective November 21, 1997, as a result of her New Jersey conviction for an offense equivalent to a violation of Section 3731(a) of Pennsylvania's Vehicle Code, 75 Pa.C.S. § 3731(a).[2] *See* 75 Pa.C.S. § 1532(b)(3) (twelve-month suspension for violation of section 3731). Correll filed a statutory appeal on November 10, 1997 and the matter was heard on January 15, 1998. At the hearing, the Commonwealth introduced documentation of Correll's New Jersey DUI conviction and the Bureau's notice of suspension to Correll. No testimony was presented to the trial court.

Correll raises four arguments on appeal.[3] First, she contends that this Court should recognize driving as a qualified right. Even were we inclined to consider this argument, clear mandates from both our legislature and our Supreme Court would preclude our accepting it. The principle is well established in Pennsylvania law that driving is a privilege and not a right. *See Plowman v. Department of Transp., Bureau of Driver Licensing,* 535 Pa. 314, 318, 635 A.2d 124, 126 (1993). *See also Department of Transp., Bureau of Driver Licensing v. Scott,* 546 Pa. 241, 250, 684 A.2d 539, 544 (1996); *Krall v. Department of Transp., Bureau of Driver Licensing,* 682 A.2d 63, 64–65 (Pa.Cmwlth. 1996) (en banc). In addition, the statutory definition of "operating privilege" states that

it is "[t]he privilege to apply for and obtain a license to use as well as the privilege to use a vehicle on a highway ... but not a contract, property right or civil right." 75 Pa.C.S. § 102. Accordingly, this court concludes that Correll's first argument is without merit.

Second, Correll claims that the suspension of her Pennsylvania driver's license following the imposition of penalties in New Jersey violates the double jeopardy clauses of the United States and Pennsylvania Constitutions. The double jeopardy clause of the United States Constitution[4] prohibits multiple punishments for the same offense. *Witte v. United States,* 515 U.S. 389, 115 S.Ct. 2199, 132 L.Ed.2d 351 (1995). Article 1, § 10 of the Pennsylvania Constitution affords the same double jeopardy protection. *Commonwealth v. Quinlan,* 433 Pa.Super. 111, 639 A.2d 1235, 1240 n. 4 (1994), *appeal dismissed,* 544 Pa. 183, 675 A.2d 711 (1996). This court has previously held that license suspension proceedings are civil in nature and impose remedial sanctions aimed at protecting the public from unsafe drivers. *Krall,* 682 A.2d at 66. The suspension of Correll's driver's license is a collateral civil consequence of her DUI conviction and, therefore, does not constitute punishment within the meaning of the double jeopardy clause. *Plowman,* 535 Pa. at 320–21, 635 A.2d at 127–28. *See also Orndoff v. Department of Transp., Bureau of Driver Licensing,* 654 A.2d 1, 2 (Pa.Cmwlth. 1994).

Third, Correll argues that the Interstate Compact is unconstitutional under the federal and state constitutions as a denial of "fundamental and procedural" due process in that it imposes sanctions for conduct occurring outside the territorial borders of

---

1. On December 10, 1996, by enactment of section 1581 of the Vehicle Code, Pennsylvania became a party to the Driver's License Compact. Pursuant to Article III of the Compact, New Jersey, as a member state, was required to notify the Bureau of Correll's DUI conviction. Pursuant to Article IV of the Compact, Pennsylvania is required to treat Correll's DUI conviction as if the conduct occurred in Pennsylvania.

2. Section 3731(a) defines the offense of driving under the influence of alcohol or controlled substance.

3. As all of these claims raise questions of law, this court's review is plenary. *Department of Transp., Bureau of Driver Licensing v. Clayton,* 546 Pa. 342, 347, 684 A.2d 1060, 1062 (1996).

4. The double jeopardy clause was made applicable to the states through the due process clause of the fourteenth amendment. *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).

Pennsylvania. In support of this allegation, she relies upon the criminal law principle that "[n]ormally a crime can be *punished* only within the state where it is committed,"[5] and cases articulating exceptions to that rule.[6] Since, as noted above, license revocation proceedings are remedial and civil in nature and not punishments, this argument also lacks merit.[7]

Correll's fourth, and final, argument is that the Compact violates the United States and Pennsylvania Constitutions as a denial of equal protection. She postulates that she is a member of a class—Pennsylvania drivers convicted in other states—who are treated more harshly than those convicted inside the Commonwealth because of the potential availability of the A.R.D. program[8] in Pennsylvania.

We first note that Correll bases this argument upon unsubstantiated allegations concerning how persons charged with DUI offenses are treated in the criminal courts of Pennsylvania, or more specifically Chester County, and New Jersey. No evidence whatever was submitted to the trial court regarding these matters. This in itself would require us to reject Correll's argument. However, even if we assume, *arguendo*, the accuracy of her allegations, her argument cannot be sustained.

 The equal protection clause protects an individual from state action that selects him out for discriminatory treatment by subjecting him to a provision in the law not imposed on others of the same class. In

*Curtis v. Kline,* 542 Pa. 249, 666 A.2d 265 (1995), our Supreme Court discussed the principle of equal protection as follows:

> The essence of the constitutional principle of equal protection under the law is that like persons in like circumstances will be treated similarly. However, it does not require that all persons under all circumstances enjoy identical protection under the law. The right to equal protection under the law does not absolutely prohibit the Commonwealth from classifying individuals for the purpose of receiving different treatment, and does not require equal treatment of people having different needs.

*Id.* at 255, 666 A.2d at 267–68. (citations omitted). So long as a classification is reasonable and based upon some ground of difference having a fair and substantial relation to the objective of the classification so that similarly situated individuals are treated alike, it is permissible. *F.S. Royster Guano Co. v. Virginia,* 253 U.S. 412, 415, 40 S.Ct. 560, 64 L.Ed. 989 (1920); *Commonwealth v. Daniel,* 430 Pa. 642, 243 A.2d 400 (1968). Governmental classifications are subject to different levels of judicial scrutiny according to classification type. *Nicholson v. Combs,* 550 Pa. 23, 703 A.2d 407 (1997).

We need not here address the reasonableness of her classification nor the appropriate level of scrutiny to which it is subject, since Correll has failed to show that the purported classification has been made at all. First, as Correll concedes, the statute is facially nondiscriminatory. Pursuant to the Compact,

---

**5.** *Commonwealth v. Shook,* 211 Pa.Super. 413, 236 A.2d 559, 561 (1967) (emphasis added).

**6.** Correll does not further articulate her procedural due process claim. It is beyond question that licenses are not to be suspended without the procedural due process required by the fourteenth amendment to the United States Constitution. *Bell v. Burson,* 402 U.S. 535, 539, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971). This court has held, however, that the *de novo* hearing provided for by 75 Pa.C.S. § 1550(a) is sufficient. *Croissant v. Commonwealth,* 114 Pa.Cmwlth. 601, 539 A.2d 492, 495 (1988), *appeal denied,* 520 Pa. 578, 549 A.2d 138 (1988). Specifically, where a Pennsylvania licensee's operating privilege has been suspended because of an out-of-state DUI conviction, procedural due process is accorded when she is given the opportunity to appear at a hear-

ing to deny the fact of the conviction. *See Witsch Motor Vehicle Operator's License Case,* 194 Pa.Super. 384, 168 A.2d 772 (1961).

**7.** Although asserting that she was denied "fundamental" due process, Correll does not argue that the Compact fails to serve a legitimate state interest, the appropriate standard by which to judge a claimed denial of substantive due process. At all events, such an argument would be unpersuasive. Our Supreme Court has recently stated that, "the Commonwealth has a compelling interest in protecting its citizens from the dangers posed by drunk drivers." *Occhibone v. Commonwealth,* 542 Pa. 588, 592, 669 A.2d 326, 328 (1995).

**8.** 75 Pa.C.S. § 1552.

the Department imposes the same suspension upon the licenses of all Pennsylvania drivers convicted of the same offense, no matter where the offense and conviction occurs.

Nor can Correll maintain a claim for discriminatory enforcement of a facially neutral statute. The law in this area was recently summarized by the United States District Court for the Eastern District of Pennsylvania:

> Traditional equal protection standards require a showing that the system of enforcement had a "discriminatory effect" and was "motivated by a discriminatory purpose." *Wayte v. United States,* 470 U.S. 598, 609, 105 S.Ct. 1524, 1531, 84 L.Ed.2d 547 (1985) (citing *Personnel Adm'rs [Administrator] of Massachusetts v. Feeney,* 442 U.S. 256, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979); *Arlington Heights v. Metropolitan Housing Dev. Corp.,* 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977); *Washington v. Davis,* 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976)). In order to state an equal protection claim for unequal or discriminatory enforcement the party claiming such discrimination must show that "persons similarly situated" have not been treated the same and that "the decisions were made on the basis of an unjustifiable standard 'such as race, religion, or other arbitrary classification' or to prevent the [party's] exercise of a fundamental right." *Government of the Virgin Islands v. Harrigan,* 791 F.2d 34, 36 (3d Cir.1986) (quoting *Oyler,* 368 U.S. at 456, 82 S.Ct. at 506) (additional citations omitted). *Accord FSK Drug Corp. v. Perales,* 960 F.2d 6, 10 (2d Cir.1992); *E & T Realty v. Strickland,* 830 F.2d 1107, 1113 (11th Cir.1987) (misapplication or selective enforcement of facially neutral legislation requires "a showing of intentional discrimination"), *cert. denied,* 485 U.S. 961, 108 S.Ct. 1225, 99 L.Ed.2d 425 (1988).

*Knepp v. Lane,* 848 F.Supp. 1217, 1221–22 (E.D.Pa.), *reh. denied,* 859 F.Supp. 173 (E.D.Pa.1994).

Plainly, Correll cannot meet either prong of this test. She does not even suggest that the Department (nor the legislature in joining the Compact) was "motivated by a discriminatory purpose." As to discriminatory effect, all that can be said is that from state to state, county to county and judge to judge, criminal defendants charged with the same conduct are sometimes treated differently. This is simply a fact of life; plea bargains, downgrading of offenses, diversion programs and sentencing alternatives are necessarily subject to the vagaries of individual discretion. If this were a violation of equal protection, all those receiving treatment harsher than some statistical average could mount successful constitutional challenges to their convictions. The absurdity of such a notion is self-evident, but this is precisely the argument Correll is making. In spite of the context in which she raises it, her complaint lies with neither the Compact nor Pennsylvania's administration of it but with the New Jersey courts, which she believes treated her more harshly than she might have been treated in Chester County, Pennsylvania. Even if her speculation on this point is correct, the simple answer is that she did not commit the offense in Chester County and the doctrine of equal protection demands only that each state entity treat similarly situated persons the same, not that all states do so.[9] Because the collateral civil consequences that automatically flow from her conviction are facially neutral and uniformly applied, these consequences no more violate the equal protection clause than does the conviction itself.

For all the reasons stated above, the order of the Court of Common Pleas of Chester County is affirmed.

### *O R D E R*

AND NOW, this 18th day of February, 1999, the order of the Court of Common

---

9. It may be noted that in *Department of Transp., Bureau of Driver Licensing v. Wylie,* 162 Pa. Cmwlth. 219, 638 A.2d 433 (1994) we rejected a challenge to a license suspension on the ground that equal protection was denied because it fell with harsher effect upon drivers from rural areas, who were more dependent upon automobile transportation than their urban counterparts. *Wylie,* however, did not involve the Compact nor the particular claims raised here.

Pleas of Chester County in the above captioned matter is hereby affirmed.

KELLEY, Judge, concurring and dissenting.

I agree with the majority's conclusion that Correll has failed to demonstrate that the equal protection clauses of the United States and Pennsylvania Constitutions preclude the imposition of a license suspension in this case. As the majority correctly notes, Correll bases this claim on unsubstantiated allegations of disparate treatment of individuals charged with DUI offenses in Chester County, Pennsylvania and New Jersey.

However, I disagree with the majority's conclusions that driving should not be regarded as a qualified property right and that the United States and Pennsylvania Constitutions do not preclude the imposition of a license suspension in this case. Hence, this concurring and dissenting opinion.

In rejecting Correll's claim that the ability to operate a motor vehicle should be recognized as a qualified property right, the majority relies on the proposition that driving in Pennsylvania is recognized as a privilege and not a right. *See, e.g., Plowman v. Department of Transportation, Bureau of Driver Licensing,* 535 Pa. 314, 635 A.2d 124 (1993); *Maurer v. Boardman,* 336 Pa. 17, 7 A.2d 466 (1939), *aff'd sub nom., Maurer v. Hamilton,* 309 U.S. 598, 60 S.Ct. 726, 84 L.Ed. 969 (1940). However, the continued adherence to this outdated and hackneyed principle ignores the realities of the modern world and defies common sense. *See Krall v. Department of Transportation, Bureau of Driver Licensing,* 682 A.2d 63 (Pa.Cmwlth.1996) (Dissenting Opinion by Kelley, J.).

In the average day, each American travels nearly 39 miles per day. P. Hu and J. Young, *Draft Summary of Travel Trends – 1995 Nationwide Personal Travel Survey,* Oak Ridge National Laboratory (January 8, 1999), p. 24. In addition, on average an individual 5 years or older takes more than 4 trips per day. *Id.,* p. 20. Nearly 50% of these trips were for family and personal business, while less than 25% of these trips were to travel to and from work. *Id.* Of the miles traveled in a day, 92.1% were traveled in a private vehicle, 2.1% were traveled in public transit, and 5.7% were traveled by other means such as by bicycle or by walking. *Id.,* p. 21.

Based on the foregoing, it is clear that the use of an automobile is fundamentally necessary to function in today's society, whether it involves a trip to the store to purchase life's necessities or a commute to work. By adhering to the timeworn proposition that licensed driving is a privilege and not a qualified right, the majority ignores the obvious. Once and for all, this court should finally accept the realities of life as we approach the new millennium and recognize that the ability to operate a motor vehicle is a qualified property right. As a result, it is also necessary for this court to reexamine the analyses used to dispose of Correll's claims relating to the Due Process and Double Jeopardy Clauses of the United States and Pennsylvania Constitutions. Accordingly, I must respectfully dissent from that portion of the majority opinion disposing of these claims.